52 A.3d 1072

AMELIA ORT, PLAINTIFF, v. ABRAHAM J. ORT, DEFENDANT.

Superior Court of New Jersey
Chancery Division Ocean County
Family Part

Decided May 3, 2012—Approved for Publication August 20, 2012.

*Reuel E. Topas,* for plaintiff.

*John P. Paone, Jr.,* for defendant (*Paone, Zaleski & Brown,* attorneys).

*Steven A. Zabarsky,* for Sharon Ort (*Citta, Holzapfel & Zabarsky,* attorneys).

L.R. JONES, J.S.C.

Once a child of divorced parents turns eighteen years old, it is very common for the non-custodial parent to immediately attempt to emancipate the child and terminate child support. This case, however, presents a completely opposite issue: What happens when a child who turns eighteen seeks her own emancipation over parental objection, i.e., when a parent asserts that emancipation is premature or otherwise inappropriate because the child is allegedly still within the sphere of parental influence?

## FACTUAL BACKGROUND

Plaintiff and defendant are divorced, and have been in litigation against each other for many years. Their daughter, Sharon, was born in 1994, and has just recently turned eighteen. Sharon presently lives with plaintiff, and is concluding high school. Following graduation, she plans to attend college in the fall of 2012 and aspires to ultimately enroll in medical school and become a physician. She is a student of high academic achievement.

Sharon enters this case as a party in interest seeking a formal order of emancipation from both of her parents. In making this application, she is represented by her own lawyer, who is not counsel for either her mother or father.[1] Sharon asserts that she wishes to be emancipated from her parents so that she can legally be her own person and make her own independent decisions in life. While she apparently has a positive relationship with plaintiff, Sharon alleges that defendant is using his status as "joint legal custodian" to improperly obstruct and overrule her wishes relative to where she will attend college following high school graduation. Defendant denies this assertion.

Sharon expresses an understanding that if the court grants her application for emancipation, neither of her parents will be legally obligated to contribute to her college education costs on a compulsory basis as might otherwise be the case under *Newburgh v. Arrigo*, 88 *N.J.* 529, 443 *A.*2d 1031 (1982). *Newburgh* authorizes courts in certain circumstances to compel parents to contribute to an unemancipated child's college costs even after the child has turned eighteen. *Id.* at 543, 443 *A.*2d 1031.

Plaintiff, as Sharon's present residential custodian, represents that she supports her daughter's desire for independence. Defendant, however, objects to his daughter's request, and argues strenuously against Sharon's emancipation. In essence, defen-

---

[1] Sharon's attorney, Steven Zabarsky, has previously represented Sharon's interests in prior legal proceedings, and an attorney-client relationship has existed for many years.

dant's position is that Sharon is too young and inexperienced to be taking such a step, and the court should not emancipate her because she is not outside the sphere of parental influence.

There are no known reported New Jersey opinions presented by any party that directly address the issue of an eighteen-year-old child's request for emancipation over parental objection. The court has located one case that deals with somewhat related subject matter, i.e., judicial exercise of *parens patriae* jurisdiction over a non-disabled "child" over eighteen years of age. In *Quinn v. Johnson,* 247 *N.J.Super.* 572, 589 *A.*2d 1077 (Ch.Div.1990), the trial court held that it did not automatically lose *parens patriae* jurisdiction over a child of divorced parties merely because the child turned eighteen. The *Quinn* court further found an ability to potentially render orders relative to the best interests of the child, with particular reference to the plaintiff-mother's request for an order prohibiting the child from residing with his older sister instead of with a parent. *Id.* at 580–81, 589 *A.*2d 1077.

*Quinn* is not a Supreme Court or Appellate Division opinion, and therefore, is not binding upon trial courts. More significantly, this court finds the logic and reasoning of *Quinn* to be inapplicable in the case at bar. Unlike Sharon in the present case, the eighteen-year-old "child" in *Quinn* was not in any fashion seeking a court order for his own emancipation or financial independence from his parents. To the contrary, the *Quinn* court expressly noted that parental monies, specifically those of the child's father, were funding one hundred percent of the child's college costs. *Id.* at 575, 589 *A.*2d 1077.

A close reading of *Quinn* further reveals that even in that case, the court did not enter a custody order over the child's objection. The issue of emancipation was simply not before the *Quinn* court at that time. Rather, the court only ordered that in exercising *parens patriae* jurisdiction, a plenary hearing would be scheduled for further inquiry on the appropriateness of the unemancipated eighteen year old's choice of residence with his sister. *Id.* at 581, 589 *A.*2d 1077. Further the court expressly acknowledged "an

unusual degree of anxiety and concern in its decision" to schedule the hearing, *Id.* at 580, 589 *A.*2d 1077, and concluded "not without substantial pause" that the mere attainment of the age of eighteen did not deprive the court of jurisdiction for inquiry. *Ibid.*

In the present case, the court does not find that *Quinn* in any way prohibits Sharon from applying for an order for her own emancipation over parental objection. The court further notes that in considering Sharon's application for emancipation, this court did in fact schedule and conduct a hearing where Sharon testified in person as to her independent desire for emancipation.

At the hearing, counsel for each of Sharon's parents had the opportunity to question. Sharon about the voluntariness and knowing nature of her request for emancipation. During the proceeding, the court considered and evaluated the credibility of Sharon's testimony relative to the voluntariness of her decision, including her overall demeanor and presentation. At all times, Sharon presented as a mature, articulate, intelligent, self-composed, and confident adult, who was very focused and thoughtful in her desire for independence and her contemplated path in life. There was absolutely no credible evidence presented by either party that Sharon was incompetent or too immature to understand the nature of her request or any part of the legal proceedings. As noted, she was represented by her own independent counsel during the entire proceedings.

Defendant supplied no persuasive evidence to the court in support of the proposition that Sharon is incapable of making decisions for herself. As noted, she is an honors student and there was no proof submitted of any developmental disability or disorder that might possibly compromise her ability to independently govern her own affairs. Nor was any evidence produced or even suggested of any history of juvenile delinquency, truancy, or other anti-social behavior, which might give the court concern as to Sharon's intelligence and ability to make important decisions for herself. To the contrary, the evidence reflects that Sharon has already arranged the funding of her college education through

academic grants, et cetera, without any desire or intent to seek additional compulsory contribution from her mother or father.

Defendant's argument against emancipation can perhaps best be summarized as an implicit suggestion that Sharon is simply too young at eighteen for entrustment with governing her own life. However, as correctly pointed out by Sharon's counsel, the New Jersey State Legislature has declared that a person who attains the age of eighteen years is, in fact, an adult. *N.J.S.A.* 9:17B–3 provides in pertinent part:

> Every person eighteen (18) or more years of age shall in all other matters and for all other purposes be deemed to be an adult and, notwithstanding any other provision of law to the contrary, shall have the same legal capacity to act and the same powers and obligations as a person 21 or more years of age.

Further, *N.J.S.A.* 9:17B–1 provides as follows:

> The Legislature finds and declares and by this Act intends, pending the revision or amendment of the many statutory provisions involved, to:
>
> a. Extend to persons 18 years of age and older the basic civil and contractual rights and obligations heretofore applicable only to persons 21 years of age or older, including the right to contract, sue, be sued and defend civil actions, apply for and be appointed to public employment, apply for and be granted a license or authority to engage in a business or profession subject to State regulation, serve on juries, marry, adopt children, attend and participate in horserace meetings and parimutuel betting and other legalized games and gaming, except as otherwise provided in subsection c. of this section, sell alcoholic beverages, act as an incorporator, registered agent, or director of a corporation, consent to medical and surgical treatment, execute a Will, and to inherit, purchase, mortgage or otherwise encumber and convey real and personal property.

Multiple other statutes and laws corroborate the recognition by the State of New Jersey that an eighteen-year-old is an adult. *See N.J.S.A.* 2C:58–3 (authorizing purchase of rifles or shotguns and eligibility to receive a Firearms Purchaser Identification Card); *N.J.S.A.* 19:31–5 (establishing voting rights for persons eighteen years of age); *N.J.S.A.* 37:1–6 (right to marry without parental consent); *N.J.S.A.* 2A:4A–20 (separate court system for juveniles under the age of eighteen years); *N.J.S.A.* 5:8–59 (gambling regulations; no person under eighteen permitted to participate in any games of chance not conducted by drawing except when prize offered consists of merchandise only and does not include cash or money); *N.J.S.A.* 43:10–6, (under New Jersey

Pensions and Retirement and Unemployment Compensation Laws, child over eighteen years of age is considered an adult for purposes of receiving employee/pensioner's benefits). It is further noted that pursuant to 10 *U.S.C.A.* § 505(a), a person eighteen years of age may enlist in the regular Army, regular Navy, regular Air Force, regular Marine Corp., or regular Coast Guard without the written consent of his or her parent or guardian.

In opposing Sharon's motion for emancipation, defendant's counsel argues that Sharon has not truly established herself as existing outside the sphere of parental influence. Certainly, there are a host of reported cases in New Jersey that deal with emancipation and hold that a child who is still under the "sphere of influence" of their parents may be considered unemancipated for child support and/or college contribution purposes. *See Gac v. Gac,* 186 *N.J.* 535, 897 *A.*2d 1018 (2006); *Newburgh, supra,* 88 *N.J.* 529, 443 *A.*2d 1031; *Dolce v. Dolce,* 383 *N.J.Super.* 11, 890 *A.*2d 361 (App.Div.2006); *Bishop v. Bishop,* 287 *N.J.Super.* 593, 671 *A.*2d 644 (Ch.Div.1995). However, these cases are clearly distinguishable in that they generally address situations where a non-custodial parent is seeking a child's emancipation and termination of child support and/or college contribution obligations, often over the objection of the child and/or the custodial parent. None of these cases in any way address the reverse fact pattern presented in the case at bar, i.e., a child over eighteen years of age who is affirmatively requesting her own emancipation over parental objection.

In *Gac v. Gac, supra,* 186 *N.J.* 535, 897 *A.*2d 1018, the New Jersey Supreme Court was confronted with a request from a custodial parent for the non-custodial parent to continue paying child support and college contribution for their child. The *Gac* Court specifically noted the following:

> In general, a parent's responsibility to pay child support terminates when the child is emancipated. We noted in *Newburgh* that emancipation can occur upon the child's marriage, on induction into military service by Court Order based on the child's best interests, or by attainment of appropriate age. The facts of each case will control when a child is emancipated. Although there is no fixed age when

emancipation occurs, N.J.S.A. 9:17B–3 provides that when a person reaches eighteen years of age, he or she shall be deemed an adult.
[*Id.* at 542, 897 *A.*2d 1018.]

In *Gac*, the Court adjudicated the case utilizing the factors espoused in *Newburgh* as to whether the plaintiff mother's request for contribution for college expenses and continued support should be paid by the defendant father. Therefore, in *Gac*, the Supreme Court implicitly acknowledged that there is a statutory mandate by the Legislature of the State of New Jersey to declare a person reaching the age of eighteen years of age to be an adult. It thus stands to reason that if the over-eighteen child (now adult) does not seek the compulsory financial support of a parent, then that parent should not have any legal control over the adult child so long as that child is competent and can independently function as an adult.

This court is well aware that in some family dynamics, parents may never truly feel comfortable releasing parental control even after their child turns eighteen. In certain cases, the aversion may be based upon love and an emotional need to protect, or perhaps overprotect, a son or daughter. In other cases, a parent who objects to a child's emancipation may simply have another agenda unrelated to the child's best interests. In this case, Sharon originally challenged the motivations of her father in objecting to her emancipation, initially arguing that the defendant had no true ongoing relationship with her and did not pay his court-ordered child support either. Reciprocally, defendant essentially denied any wrongful motives and intentions in objecting to Sharon's request for emancipation.

Ultimately, Sharon withdrew her arguments regarding her father's intentions on the grounds of legal irrelevancy. The court agrees with Sharon in this respect. Defendant's intentions and motivations are immaterial to disposition of the legal issue at hand. There is no necessity for the court to engage in further detailed fact-finding on the nature of defendant's motivations because regardless of same, Sharon is an intelligent adult with an unalienable right to pursue her own independent path to happi-

ness in this world. As quoted by Sharon's counsel in his brief, our country's founding fathers stated the following over two centuries ago:

> We hold these truths to be self-evident, that all men are created equal, that they endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness.
>
> [*Declaration of Independence—Continental Congress* (1776).]

The court grants Sharon's application for emancipation, and wishes her well as she begins her new journey in life.