**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0190-12T3

NEW JERSEY DIVISION OF YOUTH
AND FAMILY SERVICES,[1]

    Plaintiff-Respondent,

v.

W.F.,

    Defendant-Respondent,

and

R.F.,

    Defendant-Appellant.

_____

IN THE MATTER OF
J.F., J.F., J.F., J.F.,
AND J.F.,

    Minors.

_____

> APPROVED FOR PUBLICATION
>
> **January 28, 2014**
>
> **APPELLATE DIVISION**

Submitted October 21, 2013 – Decided January 28, 2014

Before Judges Yannotti, Ashrafi and Leone.

_____

[1] On June 29, 2012, the Governor signed into law A-3101, which reorganized the Department of Children and Families, and renamed the Division of Youth and Family Services as the Division of Child Protection and Permanency.  L. 2012, c. 16, eff. June 29, 2012.  We will refer to it as "the Division".

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Salem County, Docket No. FN-17-67-07.

Joseph E. Krakora, Public Defender, attorney for appellant (Thomas G. Hand, Designated Counsel, on the briefs).

John J. Hoffman, Acting Attorney General, attorney for respondent New Jersey Division of Child Protection and Permanency (Lisa A. Puglisi, Assistant Attorney General, of counsel; Mara Spiegeland, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, attorney for respondent W.F. (Durrell Wachtler Ciccia, Designated Counsel, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Karen A. Lodeserto, Designated Counsel, on the brief).

The opinion of the court was delivered by

LEONE, J.S.C. (temporarily assigned).

Defendant R.F. (Father) and defendant W.F. (Mother) married and had six children, all with the initials J.F. The three older children were born in 1991, 1992, and 1993. The three younger children were born in 1999, 2001, and 2003.

The Division obtained care and supervision, but not custody, over all six children in litigation under the "abuse and neglect" (FN) docket. Father appeals from the order terminating the FN litigation. He argues that the litigation gave custody of the children to Mother without an appropriate hearing. However, the three older children became adults during

the course of the FN litigation, and so the issue of their custody is moot. Moreover, the custody of the three younger children was decided by consent under the "non-dissolution" (FD) docket, when Father and Mother agreed that they would share joint legal custody with Mother being the parent of primary residence. Accordingly, we affirm.

## I.

We summarize the pertinent history of this litigation. In 2006 and 2007, the Division received referrals that Father physically abused the older children, and that there had been dangerous altercations. On June 11, 2007, the Division under the FN docket requested an order to show cause and filed a verified complaint pursuant to N.J.S.A. 9:6-8.21 to -8.73 and N.J.S.A. 30:4C-12. The judge placed all six children under the Division's care and supervision. The judge issued an order of protection restraining the Father from going near the marital home. See N.J.S.A. 9:6-8.31(c), -8.55. The judge also required Father's visitation with the children to be supervised.

On December 3, 2007, the date set for the fact-finding hearing, the parties agreed to convert the litigation to a "family in need of services" case. Then and in frequent hearings thereafter, the court continued care and supervision under N.J.S.A. 30:4C-12.

Subsequently, the judge found that Father's visitation with the three younger children could be unsupervised, but continued supervision of his visits with the three older children. Later, the judge ruled that the three older children did not have to visit with Father.

In December 2008, a judge to whom the matter was reassigned permitted Father to return to the marital home on a full-time basis and to enjoy unrestricted time with the children. Within a month, however, the judge reinstated the order of protection restraining Father from the marital home, and restricted Father's contact with the three older children, after Father had an altercation with one of the older children. The judge nonetheless continued Father's unsupervised parenting time with the three younger children.

Father filed a motion for custody under the FD docket. The judge consolidated the FN and FD actions, and dismissed Father's FD motion for lack of changed circumstances. On March 20, 2009, the judge ordered that custody would be handled in the FD action, and in an FD order granted Mother's request for temporary custody of all six children, without prejudice. The Law Guardian for the three younger children stated, however, that they wanted Father returned to the home and that visits were going very well.

At the June 12, 2009 hearing, Mother and Father agreed to joint custody of the three younger children, with Mother as the parent of primary residence. The judge's order in the FD action provided: "By consent both parties are granted joint legal custody of the three youngest children . . . , with [Mother] being the parent of primary residence." The judge's order in the FN case stated that "joint legal and physical custody" of the three younger children "will be continued with [Mother and Father] pursuant to [the judge's] order under [the FD] docket . . . with [Mother] named as parent of primary residence and [Father] the parent of alternate residence." Father's counsel stated, "I'm glad that we were able to resolve the issue of custody as to the three younger children."

Father's counsel, who had originally requested a hearing for all the children under N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382 (2009), now limited his argument to the three older children. He argued that a hearing was necessary under G.M. because Father "still want[ed] to have custody of his older children." The judge disagreed, saying he had resolved the custody issue in a full hearing in the FD case. The judge issued an FD order granting Mother sole legal custody of the three older children. The Division agreed that the FN action should be closed. The judge ruled that there were no longer any

issues of abuse or neglect remaining for the Division to address, that there was no need for "additional hearing[s] under this [FN] docket," and that the "[l]itigation in this matter is hereby terminated effective this date."  In the FN order, the judge continued to restrain Father from the marital home.

Father filed a notice of appeal from the June 12, 2009 order terminating the FN litigation and denying his "motion for further hearings under the FN docket."  The Division filed a motion asking us to vacate the termination of the abuse and neglect litigation under the FN docket, and to remand for a dispositional hearing that satisfied G.M.  We granted the Division's motion "for final remand" on March 29, 2010.

On remand, Father argued that a hearing was necessary under G.M. because he "had custody of all six children" before the Division's involvement, and after the June 12, 2009 hearing "he only had custody of 3 children" because "the court refused to give custody of the three older [children] back to [him]."  By that time, however, the oldest child had turned eighteen and aged out of the litigation.  By July 2010, the second oldest child had also turned eighteen.  By November 2011, the last of the three older children turned eighteen, and was dismissed from the litigation, along with the Law Guardian for the older children.

The trial court ruled that the only issue to be addressed at a hearing was "whether it was safe for the children to be with their father" so that the court could decide whether to lift "the order of protection" barring him from the marital home. Father's counsel repeatedly agreed that the only issue left under the FN docket was "whether the order of protection should be lifted."

The Division maintained that it was safe for Father to return home. The Law Guardian for the three younger children agreed that Father's return was safe for his clients. Mother objected, however, in part because she no longer wished to live with Father. Indeed, Mother soon filed a divorce complaint under the matrimonial (FM) docket.

The trial court stated that the hearing would not address "custody between the two parents," which could be challenged "in the FD, FM world." Father's counsel agreed that custody of the three younger children should be handled "under the FM docket."

On July 20, 2012, Father's counsel said a dispositional hearing was still necessary to resolve the issue of the order of protection restraining Father from the marital home. Mother stated that she recently vacated the home, and offered Father the keys to that home. The Division and the Law Guardian for

the three younger children reiterated that the FN case should be closed, and Mother agreed.

After a summary dispositional hearing, the judge now handling the matter dismissed the order of protection restraining Father from that home, and gave him the keys. At Mother's request, the judge restrained Father from Mother's new home "under all Family Court dockets," including the FD and FM dockets. The judge ruled that "there are no longer any issues to be determined under the FN docket and all other issues [are] to be determined under the FD/FM dockets." Accordingly, the judge ordered that "[l]itigation in this [FN] matter is terminated." The judge's order reiterated that joint legal and physical custody of the three younger children continued under the FD docket "with [Mother] named as parent of primary residence and [Father] the parent of alternate residence."

## II.

Father appeals from the July 20, 2012 order. We must hew to our standard of review:

> [W]e generally "defer to the factual findings of the trial court because it has the opportunity to make first-hand credibility judgments about the witnesses who appear on the stand; it has a 'feel of the case' that can never be realized by a review of the cold record." Moreover, we recognize that "[b]ecause of the family courts' special . . . expertise in family matters, appellate courts should accord

deference to family court factfinding." Nevertheless, when no hearing takes place, no evidence is admitted, and no findings of fact are made, different principles apply. On those rare occasions, appellate courts need not afford deference to the conclusions of the trial court.

[G.M., supra, 198 N.J. at 396 (citations omitted).]

### III.

Given the length of this litigation, we focus our discussion by quoting Father's statement of what this appeal challenges:

> This is a case about custody, not real estate rights. The State effectuated a change in this father's physical custody to his six children. Without appropriate factual or legal findings, the State then dismissed the litigation without affording the father the opportunity to challenge the change in his custodial rights.

Father urges that "[t]he orders changing custody must be vacated and the matter remanded for a hearing to protect, not destroy, the rights of the father and the safety of the remaining minor children."

Father's appeal challenging custody fails for two fundamental reasons. First, the three older children are now adults. Second, the three younger children's custody was determined by consent.

A.

To the extent Father seeks to challenge or obtain custody of the three older children, this appeal is moot. When the FN litigation began, all the children were less than eighteen years old. They were therefore within the scope and "purpose of [the abuse and neglect] act [which] is to provide for the protection of children under 18 years of age . . . ." N.J.S.A. 9:6-8.8(a). The act thus provides that an "'[a]bused or neglected child' means a child less than 18 years of age," N.J.S.A. 9:6-8.21(c) and an "'[a]bused child' means a child under the age of 18 years," N.J.S.A. 9:6-8.9. Elsewhere in Title Nine, "the word 'child' is similarly defined as 'any person under 18 years of age.'" N.J. Div. of Youth & Family Servs. v. A.L., 213 N.J. 1, 20 (2013) (quoting N.J.S.A. 9:2-13(b)); see, e.g., N.J.S.A. 9:3-38(b), 9:6-8.84, 9:6A-10(a).

Similarly, Title Thirty addresses the care and custody of "a child," and defines a "child" as a "person under the age of 18 years." N.J.S.A. 30:4C-2(b)-(d); accord N.J.S.A. 30:4C-52(a). A few "circumscribed" statutes permit the Division to provide certain services to particular persons between the ages of eighteen and twenty-one, but they do not apply here. State ex rel. J.S., 202 N.J. 465, 478-79 (2010) (citing N.J.S.A.

30:4C-2.3 and -27.5); see N.J.S.A. 9:17B-2(f), 30:4C-1.1(g), 30:4C-4.4(a), 30:4C-26.20(e).

Likewise, trial courts in FD and FM actions can award custody of "a minor child," N.J.S.A. 9:2-4, which the Legislature has elsewhere defined as "a child under the age of eighteen years," N.J.S.A. 3B:12-69; accord N.J.S.A. 43:10-18.1, 43:13-22.3; see also N.J.S.A. 2A:34-54 (defining "[c]hild" as "an individual who has not attained 18 years of age" for purposes of the Uniform Child Custody Jurisdiction Act). In determining when a parent's obligation of financial support ends, "[a]ttainment of age 18 establishes prima facie, but not conclusive, proof of emancipation." Newburgh v. Arrigo, 88 N.J. 529, 543 (1982). In certain situations, parents still have an economic duty to support children after their eighteenth birthday, and thus have not fully "relinquish[ed] the right to custody." Id. at 543-45; see Dolce v. Dolce, 383 N.J. Super. 11, 17 (App. Div. 2006). Father does not claim that any of his three older children are unemancipated, or that such economic dependence would justify an award of custody over an adult. See Ort v. Ort, 428 N.J. Super. 290, 296-97 (Ch. Div. 2012).

Finally, the age-of-majority statute provides that, subject to limited exceptions inapplicable here, "every person 18 or more years of age shall in all other matters and for all other

purposes be deemed to be an adult," N.J.S.A. 9:17B-3, in order to exercise "the basic civil . . . rights" of adults, N.J.S.A. 9:17B-1(a). See Green v. Auerbach Chevrolet Corp., 127 N.J. 591, 594-99 (1992). Adults normally are not under the custody of another. See Ort, supra, 428 N.J. Super. at 295-98 (ruling that a child who turns eighteen may seek her own emancipation over parental objection); see also N.J.S.A. 9:6-8.54(c) ("No placement may be made or continued under this section beyond the child's eighteenth birthday without his consent.").[2]

Therefore, the issue of custody of the three older children became moot when they turned eighteen-years old. See, e.g., N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 21 n.3 (2011); L. v. G., 203 N.J. Super. 385, 390 (Ch. Div. 1985); see also Oxfeld v. N.J. State Bd. of Educ., 68 N.J. 301, 303 (1975) (holding that a case challenging a high school's regulation became moot when the petitioners finished high school). "It is firmly established that controversies which have become moot or academic prior to judicial resolution ordinarily will be dismissed." Cinque v. N.J. Dept. of Corr., 261 N.J. Super. 242, 243 (App. Div. 1993). Generally, "'courts will not decide cases in which . . . a judgment cannot grant

---

[2] We do not address the situation of persons with mental or physical disabilities.

effective relief.'" Ibid. (quoting Anderson v. Sills, 143 N.J. Super. 432, 437 (Ch. Div. 1976)).

We cannot grant effective relief because we cannot award Father custody of his three adult children. To the extent Father seeks a ruling on how their custody should have been determined, such a request is moot because it "'can have no practical effect on the existing controversy.'" N.J. Div. of Youth & Family Servs. v. J.C., 423 N.J. Super. 259, 263 (App. Div. 2011) (quoting N.J. Div. of Youth & Family Servs. v. A.P., 408 N.J. Super. 252, 261 (App. Div. 2009)). Further, this is not an appeal where the issues raised "involve significant matters of public policy, are extremely important, and undoubtedly will recur in cases that are likely to be mooted before adjudication." In re N.N., 146 N.J. 112, 124 (1996). We thus do not reach any claims concerning the custody of the three older children.

B.

Father also claims that the trial court improperly entered "orders changing custody" of the three younger children in the FN action. Father, however, ignores that their custody was determined not by judicial fiat, but by parental consent in the FD case.

On June 12, 2009, Father agreed that he and Mother would have joint legal custody of the three younger children with Mother as the parent of primary residence and Father as the parent of alternate residence. The judge embodied the parties' consent in an order in the FD case. The June 12, 2009 order in the FN action made clear that the custody of the three younger children had been determined in the FD case. All subsequent case management and compliance review orders in the FN litigation reiterated that the parents' joint custody of the three younger children was governed by the order in the FD case, "with [Mother] named as parent of primary residence and [Father] the parent of alternate residence." Similarly, the June 20, 2012 disposition order, from which Father appeals, merely continues the parents' joint legal and physical custody over the three younger children as determined by the order under the FD docket.

At the June 12, 2009 hearing, Father's counsel made clear that the parents' agreement had "resolved" the custody of the three younger children. He then confined to the three older children his argument that further FN hearings were required under G.M. After the judge denied that request and terminated the FN litigation, Father appealed the June 12, 2009 order terminating the FN action, but not the order in the FD case

14

resolving the custody of the three younger children by consent. His notice of appeal named all six children, but made clear that he was challenging the "denial of the motion for further hearings under the FN docket," which he had requested for the three older children only. The Division's motion for remand asked us to vacate the termination of the abuse and neglect litigation, and remand for a dispositional hearing under G.M., which again had been requested only for the three older children. Nothing in our "final remand" in the FN action indicates that we were overturning the parents' consensual resolution in the FD case of the custody of the three younger children.

After the remand, Father did not claim that the remand was granted to address the agreed-upon custody of the three younger children. Instead, Father's counsel complained that Father had lost "custody of the three older [children]" without a hearing under G.M. As the three older children became adults, Father's counsel agreed that the sole issue remaining in the FN litigation was the order of protection restraining him from the marital home. Father's counsel agreed that any change in custody of the three younger children should be handled under the FM docket.

Father confirms that he is not appealing the June 12, 2009 FD order which resolved the custody of the three younger children by agreement between Father and Mother. Because Father consented to that custody arrangement, and does not challenge the FD order embodying that arrangement, he cannot raise the issue of the custody of the three younger children in this appeal. See generally N.J. Div. of Youth & Family Servs. v. M.D., 417 N.J. Super. 583, 620-21 (App. Div. 2011) (allowing parents to change the result of a judicial custody determination in an FN action by consent order or by "attempt[ing] to 'resolv[e] the questions of custody and parenting time by agreement'") (quoting N.J. Div. of Youth & Family Servs. v. N.D., 417 N.J. Super. 96, 115 (App. Div. 2010)); N.J. Div. of Youth & Family Servs. v. J.D., 417 N.J. Super. 1, 23 (App. Div. 2010) (ruling that where the parents in an FN action agreed to a judicial "custody determination under N.J.S.A. 9:2-4," they "may not now protest the procedures followed").

If Father believes that the custodial arrangement he agreed to on June 12, 2009, is no longer appropriate, he may raise that issue in the FM docket, for example, by filing a motion to change custody alleging sufficient changed circumstances. N.J. Div. of Youth & Family Servs. v. I.S., 214 N.J. 8, 40, cert. denied, __ U.S. __, 134 S. Ct. 529, 187 L. Ed. 2d 380 (2013);

G.M., supra, 198 N.J. at 402 n.3; Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007).

IV.

Father argues that G.M. required that a dispositional hearing be held after our remand because it would determine the custody of the children. However, the issue of the custody of the three older children became moot as they became adults, and the issue of the custody of the three younger children had been settled by consent prior to our remand.

Moreover, the requirements for a dispositional hearing under G.M. were never triggered after our remand. G.M. "h[e]ld that the statutory framework of Title Nine provides that upon a finding of abuse and neglect, the offending parent or guardian is entitled to a dispositional hearing to determine whether the children may safely return to his or her custody, and if not, what the proper disposition should be." G.M., supra, 198 N.J. at 387-88. Before a dispositional hearing is required, however, there must be a fact-finding hearing at which a finding of abuse and neglect is made. N.J.S.A. 9:6-8.44, -47. No such hearing or finding ever occurred here. Therefore, the preconditions for a dispositional hearing under N.J.S.A. 9:6-8.51 never arose, and G.M.'s requirements never came into play. Father's G.M. arguments thus do not apply here. See I.S., supra, 214 N.J. at

29-30 (distinguishing G.M. because there was a finding of abuse and neglect in G.M.).[3]

Because Father's appeal is "about custody," and the custody issues were either mooted by adulthood or resolved by consent, we have no occasion to untangle the trial court's post-remand proceedings, which were prolonged and confused substantially, but not solely, by Father. We note, however, the Supreme Court's recent ruling that if the Division fails to establish abuse and neglect in a fact-finding hearing, "[t]he Title 9 action must be dismissed," and that the Division must proceed under Title Thirty if it proceeds at all. I.S., supra, 214 N.J. at 14, 29-39; see N.D., supra, 417 N.J. Super. at 109 (noting that "the Division may proceed under Title 30, irrespective of a finding of abuse or neglect"); see also J.D., supra, 417 N.J. Super. at 23 ("Title 30 does not discuss dispositional hearings, as delineated in Title 9.").

---

[3] Also misplaced is Father's reliance on our ruling in G.M. that the proper remedy is to remand for a custody determination based on "the best interest of the child standard" in the FN litigation, at which the parents would receive State-supplied counsel. Div. of Youth & Family Servs. v. G.M., 398 N.J. Super. 21, 44-52 (App. Div. 2008), aff'd as modified, 198 N.J. 382 (2009). The Supreme Court rejected that remedy, however, because the trial court's error "was not in the failure to hold a custody hearing, but in the failure to hold a dispositional hearing." G.M., supra, 198 N.J. at 402.

V.

Father does not dispute the dispositional order allowing him to occupy the former marital home. Father's brief also does not challenge the other relief granted at the dispositional hearing, namely the order of protection for Mother at her new home, and so its propriety is not before us.[4] Thus, Father does not challenge any decision actually made at the July 20, 2012 dispositional hearing. Nonetheless, Father attacks the dispositional hearing, claiming it changed custody without due process. Because the dispositional hearing did not change custody of the children, we need not consider the process provided at that hearing.

Father also challenges orders before June 12, 2009 which he contends changed custody to his three younger children. However, when Father agreed to the June 12, 2009 custody

---

[4] We note that N.J.S.A. 9:6-8.31(c) permits a preliminary order of protection prior to a finding of abuse and neglect, and that orders of protection are authorized after a fact-finding hearing, N.J.S.A. 9:6-8.50(d), after a dispositional hearing, N.J.S.A. 9:6-8.51(c), -8.53, and "in assistance or as a condition of any other order made under this act," N.J.S.A. 9:6-8.55. However, "the family court lacks authority to enter Title 9 orders when 'it finds that the child has not been abused or neglected.'" I.S., supra, 214 N.J. at 31-32 (quoting N.J. Div. of Youth & Family Servs. v. T.S., 426 N.J. Super. 54, 64 (App. Div. 2012)). Because Father does not challenge the order of protection issued at the dispositional hearing, we have no occasion to explore whether that order was authorized under Title Nine, Title Thirty, or the FD or FM dockets.

agreement of the three younger children, any errors in earlier proceedings regarding custody of those children became moot. See J.C., supra, 423 N.J. Super. at 262-63 (ruling that a parent's claim that she was denied due process and a full dispositional hearing was mooted by her consent to adoption). In any event, we find Father's challenges to those orders lack sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E). To the extent Father claims that orders after June 12, 2009, changed the custody of the younger three children, he is mistaken, and accordingly those arguments also lack sufficient merit. Ibid. We also do not find sufficient merit concerning his complaints at the trial court's handling of his allegations of problems in Mother's house, which in any event were not raised in a motion to change custody. Ibid.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0190-12T3