# **RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0582-15T3

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

      Plaintiff-Respondent,

v.

R.D.,

      Defendant-Appellant,

and

H.R.,

      Defendant-Respondent.

_____

IN THE MATTER OF A.R.,

      Minor.

_____

      Submitted March 27, 2017 — Decided  March 31, 2017

      Before Judges Haas and Currier.

      On appeal from Superior Court of New Jersey,
      Chancery Division, Family Part, Passaic
      County, Docket No. FN-16-75-15.

      Joseph E. Krakora, Public Defender, attorney
      for appellant (Arthur David Malkin, Designated
      Counsel, on the brief).

Christopher S. Porrino, Attorney General, attorney for respondent New Jersey Division of Child Protection and Permanency (Andrea M. Silkowitz, Assistant Attorney General, of counsel; Toni Lynn Imperiale, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, attorney for respondent H.R. (Cary L. Winslow, Designated Counsel, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Rachel E. Seidman, Assistant Deputy Public Defender, on the brief).

PER CURIAM

Defendant R.D.[1] appeals from the Family Part's August 21, 2015 order, following a dispositional hearing, terminating litigation initiated by the Division of Child Protection and Permanency ("Division") pursuant to N.J.S.A. 30:4C-12 against defendant and H.R., who are the parents of Alice, born in 2007. The order also granted custody of Alice to H.R.

Defendant challenges the trial judge's determination, asserting that "the proceedings herein did not comply with the procedural requirements of N.J.S.A. 30:4C-12." The Division, the Law Guardian on behalf of Alice, and H.R. support the judge's

---

[1] We refer to the parties by initials and to their child by a fictitious name in order to preserve their privacy.

A-0582-15T3

determination on appeal.  Based on our review of the record and applicable law, we affirm.

We derive the following procedural history and facts from the record developed before the Family Part.  When the Division first became involved with defendant and H.R. in July 2008, they were living together, but later separated due to domestic violence issues between them.  The Division removed Alice from the home in December 2008 and thereafter provided services to the family, including parenting skills training, psychological evaluations for both parents, individual counseling, and domestic violence counseling for defendant.

The child returned to defendant's care in June 2009.  Less than a month later, however, the Division removed the child again after defendant was arrested for shoplifting while Alice was with her.  Alice resumed living with defendant in December 2010, and the Division closed the case in June 2011.

In September 2014, a hospital staff person called the Division to report that defendant had appeared at the hospital on a bicycle with Alice and a dog, and that defendant was experiencing hallucinations and presented with anxiety and paranoia.  Defendant was running through the emergency room with Alice and the dog, and she told the hospital staff that "God spoke to her through movies."  Because defendant needed to be hospitalized, the Division

conducted "a Dodd removal"[2] of Alice and placed her in a resource home. On September 4, 2014, the trial court granted the Division custody, care, and supervision of Alice.

After the hospital released defendant, she appeared in court on September 29, 2014. Defendant stated that H.R. had moved to Puerto Rico, but she was not able to provide the Division with H.R.'s contact information. The trial judge granted defendant weekly supervised visitation with Alice. Over the next three months, however, defendant's visits with the child were sporadic at best and, when she did appear, she would sometimes leave the visits early.

The judge also ordered defendant to undergo a psychiatric evaluation. Following this evaluation, the psychiatrist opined that defendant suffered from bi-polar disorder and required ongoing mental health treatment, including mood-stabilizing medication, under the direction of a psychiatrist. Although the court ordered defendant to comply with these recommendations, she never did so.

On December 17, 2014, the Division advised the trial court that it would forego seeking a finding that defendant had abused

---

[2] A "Dodd removal" is an emergent removal of a minor without a court order pursuant to N.J.S.A. 9:6-8.21 to -8.82. N.J. Div. of Youth & Fam. Servs. v. P.W.R., 205 N.J. 17, 26 n.11 (2011).

or neglected Alice pursuant to N.J.S.A. 9:6-8.21(c)(4), but wished to continue the matter under N.J.S.A. 30:4C-12 so that it could continue to provide services to defendant and Alice. Defendant did not object to the dismissal of the Title 9 portion of the case, or the continuance of the litigation under Title 30.

The Division was finally able to locate H.R., who stated that he was interested in caring for Alice. The Division arranged with its counterpart agency in Puerto Rico to conduct a home study of H.R.'s residence. The results of the home study were positive. In addition, H.R. arranged to come to New Jersey so he could engage in visits with Alice. These visits were not supervised.

Based upon these developments, and defendant's continued refusal to obtain needed psychiatric care,[3] the Division advised the trial court at a March 16, 2015 compliance review hearing that its plan was to reunite Alice with H.R. at the end of the school year in June. The Division also proposed that the trial court

---

[3] At the March 16, 2015 hearing, defendant asserted that she worked as a bartender, for an energy company, and at her parents' real estate and mortgage company in Miami, Florida. Defendant stated that she also had a career as a dental assistant. In addition, defendant alleged that she had attended three different colleges, had a $35,000 scholarship "waiting for" her, and was "supposed to be in school."

conduct a dispositional hearing[4] in August to determine whether it would be safe to return Alice to defendant or whether the child's best interests would be served by placing the child in H.R.'s care. Through counsel, defendant did not object to the case progressing down this procedural path.

On April 29, 2015, the Division filed an emergent application to suspend defendant's visits with Alice after defendant called the police to falsely report that the child had been abducted. In addition, at her most recent visit with Alice two weeks earlier, defendant attempted to walk the child out of the building, and then kept the child in a bathroom with her for twenty minutes. Although defendant's counsel was present, the Division was unable to find defendant to apprise her of this motion and it appeared that defendant did not live at the address she had provided to the

---

[4] Thereafter, the parties and the trial judge sometimes mistakenly referred to the upcoming hearing as a "G.M. hearing" as a shorthand term. However, a "G.M. hearing" is held near the conclusion of Title 9 proceedings where the trial court needs to determine whether the child "may be safely released to the custody of [the offending parent], who was responsible for [his or her] care at the time of the filing of the complaint, or whether, consistent with N.J.S.A. 9:6-8.51, some other disposition is appropriate." N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 387-88 (2009). However, in a Title 30 case, like the present one, where there is no finding of abuse or neglect on the part of a parent, the trial court conducts a summary hearing at the end of the litigation to determine what placement would be in the child's best interests. N.J. Dep't of Children & Families, Div. of Youth & Family Servs. v. I.S., 214 N.J. 8, 36-37, cert. denied, ___ U.S. ___, 134 S. Ct. 529, 187 L. Ed. 2d 380 (2013).

Division. Pending the May 6, 2015 return date, the trial judge cancelled defendant's next scheduled visit with Alice.

On May 6, 2015, defendant was not present in court at the start of the proceedings. After oral argument, however, defendant entered the courtroom. The trial judge advised defendant that he was suspending her visitation with Alice until she began attending psychiatric treatment sessions. Defendant replied by informing the judge that: her father had left her a $20 million inheritance; she was applying for an "anti-terrorism" job with the FBI; was about to receive a monetary award for identifying a suspect in the 1995 Oklahoma City bombing; and planned to become "a congresswoman."

Defendant never appeared in court again. Although defendant provided the trial judge on May 6, 2015 with a new address where she said she could be reached, defendant did not reside at that location.

On June 15, 2015, the trial judge held a compliance hearing and transferred custody of Alice to H.R. Thus, the child was finally able to leave her resource home to live with a parent. The judge scheduled a dispositional hearing for August 21, 2015.

Prior to that hearing, the Division made numerous attempts to locate defendant and filed an "Affidavit of Diligent Inquiry" pursuant to Rule 5:12-2(b) detailing these efforts. Defendant did

not appear at the hearing. Her attorney advised the trial judge that he was "not at liberty" to say whether he was aware of defendant's whereabouts.

At the hearing, the Division presented the testimony of a caseworker, who summarized the procedural history and facts set forth above. The caseworker reiterated that the Division's counterpart-agency in Puerto Rico had "no concerns" about H.R.'s ability to parent Alice and that the child "wishes to be with her father." Defendant's attorney did not call any witnesses or present any evidence on her behalf.

At the conclusion of the hearing, the trial judge rendered an oral decision, terminating the litigation and placing Alice in H.R.'s legal and physical custody. In explaining his ruling, the judge stated:

> I've listened to the caseworker testify and I do find her testimony to be credible and uncontradicted, and I have to choose today between the father or the mother . . . as to where this child is going to be placed or who is going to get the legal and physical custody [and] clearly it's with [H.R.] And I'm . . . not only to consider what I heard today and what I see today, what I saw in the past. . . . I need to place on the record that my observations of [defendant's] demeanor were that she was incoherent at times when she addressed the [c]ourt, she rambled, she was delusional, and that was the last time that she was here and nobody has seen her since and she's not here today.

On the other hand, [H.R.], aside from . . . one incident with marijuana, appears to have done everything he's supposed to do for his child with respect to healthcare, education, clothing, shelter, et cetera. I find that it would be a risk, a safety risk, to place this child or to maintain custody with [defendant] because of what I just said. She's delusional, she's incoherent, she rambles, and she is in clear need, in this [c]ourt's opinion, based on my observations, of psychiatric assistance or therapy . . . [and] she is not capable, in my opinion, of being an appropriate parent to this child when juxtaposed against the ability of [H.R.] at this time.

The judge continued:

So based upon [defendant's] noncompliance with services, which she clearly needed, based upon my personal observations of her the last time she was here, based upon the fact that I know that -- or I find that she knew about today and is not here, and that [H.R.] has acted in the appropriate fashion with respect to his daughter since she's been in his custody, I find it would be in the best interest of the child to . . . be with [H.R.] and he is now granted physical and legal custody and the case will be dismissed.

This appeal followed.

On appeal, defendant challenges the trial judge's determination and asserts that the judge followed an incorrect procedural course in deciding to place Alice with H.R. at the conclusion of the Title 30 proceedings. We disagree.

Our review of a trial court's fact-finding in a non-jury case is limited. Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150,

9

169 (2011). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence. Deference is especially appropriate when the evidence is largely testimonial and involves questions of credibility." Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). We "should not disturb the factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid. (internal quotation marks omitted). However, we owe no deference to a trial court's interpretation of the law, and review issues of law de novo. Mountain Hill, L.L.C. v. Twp. Comm. of Middletown, 403 N.J. Super. 146, 193 (App. Div. 2008), certif. denied, 199 N.J. 129 (2009).

We also extend special deference to the Family Part's expertise. N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 342-43 (2010); Cesare, supra, 154 N.J. at 413. Unless the trial judge's factual findings are "so wide of the mark that a mistake must have been made" they should not be disturbed. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting C.B. Snyder Realty, Inc. v. BMW of North America Inc., 233 N.J. Super. 65, 69 (App. Div. 1989)). "It is not our place to second-guess or substitute our judgment for that of the family

10                                        A-0582-15T3

court, provided that the record contains substantial and credible evidence to support" the judge's decision. N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448-49 (2012).

Applying these standards, we discern no basis for disturbing the trial judge's reasoned determination that Alice should be removed from her resource home and placed in H.R.'s custody. H.R. "was the only appropriate parent to award custody to at the dispositional conclusion of this fact-sensitive Title 30 proceeding." I.S., supra, 214 N.J. at 41. H.R. had a stable home and was willing and able to care for Alice, who wished to live with him.

On the other hand, defendant suffered from a psychiatric condition for which she refused to seek treatment. Between September 2014 and April 2015, defendant's supervised visits with Alice were sporadic at best. In early April 2015, defendant attempted to leave the Division office with the child and, two weeks later, she called the police to falsely report that the child had been abducted. After May 6, 2015, defendant never appeared in court again, never provided her address to the Division, and never complied with the trial judge's order that she participate in treatment for her psychiatric condition. Thus, we are satisfied that there was competent, credible evidence in the record to support the trial judge's finding that it was not safe

11                                                          A-0582-15T3

to return Alice to defendant's care and that placing the child with H.R. served the child's best interests.

We also discern no merit in defendant's contention that she was deprived of due process as a result of the proceedings that occurred. The record demonstrates that defendant's rights were scrupulously protected. Defendant was represented by an attorney at all critical stages of the litigation, including the August 21, 2015 dispositional hearing. Thus, she had the opportunity to present witnesses and evidence, cross-examine the Division's witness and question its proofs, and engage in oral argument.

As defendant points out, the trial judge and the parties' attorneys often incorrectly referred to the August 21, 2015 dispositional hearing as a "G.M. hearing," rather than as a Title 30 summary hearing where the child's best interests govern the placement decision. However, this mistake in nomenclature had no impact upon defendant's due process rights. Contrary to defendant's contention that the trial judge did not consider Alice's best interests, the judge made a specific finding that "it would be in the best interest of the child to . . . be with" H.R. and fully explained the basis for this decision as required by N.J.S.A. 30:4C-12. N.J. Div. of Youth & Family Servs. v. T.S., 426 N.J. Super. 54, 65 (App. Div. 2012) (noting that under the statute, a trial court "must conduct a summary hearing" and

determine whether the "best interests of the child" require the placement sought by the Division).

Finally, defendant's assertion that the trial judge "permanently separated" her from Alice by granting custody of the child to H.R. also lacks merit. Like any other parent, defendant may file a motion to address custody or visitation under a non-dissolution (FD) docket if she can demonstrate a sufficient change of circumstances. N.J. Div. of Youth & Family Servs. v. W.F., 434 N.J. Super. 288, 300 (App. Div.) (citing I.S., supra, 214 N.J. at 40; G.M., supra, 198 N.J. at 402, n.3; and Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007)), certif. denied, 218 N.J. 275 (2014).

In sum, the trial judge's decision to grant custody of Alice to H.R. was an appropriate disposition to end the Title 30 proceedings. This result was fully supported by the record and we perceive no basis for disturbing it.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION