**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0382-19T1

F.P.,[1]

    Plaintiff-Appellant,

v.

H.L.,

    Defendant-Respondent.

_____

          Argued[2] October 2, 2020 – Decided November 5, 2020

          Before Judges Sabatino and Gooden Brown.

          On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0380-17.

          Charles C. Rifici, argued the cause for appellant (Rotolo Karch Law, attorneys; Charles C. Rifici, on the briefs).

---

[1]  Pursuant to Rule 1:38-3(d)(9) and (10), we identify the parties by initials to protect their privacy.

[2]  At the request of the parties, the oral argument was conducted with the assistance of interpreters.

H.L., respondent, argued the cause pro se.

PER CURIAM

In this post-judgment matrimonial matter, plaintiff/ex-husband appeals from an August 28, 2019 Family Part order denying his request to use his address in Bridgewater, instead of defendant/ex-wife's address in Bridgewater, as the residence of the parties' children for school enrollment purposes for the 2019 to 2020 school year. For the reasons that follow, we dismiss the appeal as moot.[3]

The parties married in 2008 and have two children, a boy born June 2008, and a girl born September 2013. During the marriage, the parties resided on Partridge Drive in Bridgewater (the marital residence). In September 2016, defendant left the marital residence with the children, moved to an undisclosed domestic violence shelter, filed a domestic violence complaint against plaintiff, and obtained a temporary restraining order (TRO) under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. On February 1, 2017, a final restraining order (FRO) was entered in defendant's favor, which order was amended on February 24, 2017. Pursuant to the FRO, defendant was

---

[3] While this appeal was pending, plaintiff filed a motion to strike portions of defendant's merits brief as "outside and/or unsupported by the record" presented in the trial court. By our decision today, we also deny as moot plaintiff's motion to strike.

A-0382-19T1

granted temporary custody of the children and designated the parent of primary residence (PPR), with defendant designated the parent of alternate residence (PAR).[4]

About a month after defendant filed the domestic violence complaint, on October 12, 2016, plaintiff filed a complaint for divorce, as a result of which a judgment of divorce (JOD) was entered on July 25, 2018, incorporating a handwritten settlement agreement dated July 25, 2018, and a typed stipulation dated July 23, 2018. The stipulation acknowledged that "[t]he parties agree[d to j]oint [l]egal [c]ustody" of the children and that "[p]endente lite[,]" defendant had been the PPR "per [c]ourt [o]rders of [February 24, 2017][5] and [April 27,

---

[4] In awarding temporary custody under the PDVA, "[t]he court shall presume that the best interests of the child are served by an award of custody to the non-abusive parent." N.J.S.A. 2C:25-29(b)(11).

[5] The February 24, 2017 order noted that while "the FRO grant[ed d]efendant primary residential custody" of the children pendente lite, "no [PPR] has yet been formally designated" and would be subject to resolution of the matrimonial matter in which custody was a disputed issue. See R.K. v. F.K., 437 N.J. Super. 58, 64-65 (App. Div. 2014) (holding that while N.J.S.A. 2C:25-29(b)(11) requires the domestic violence court to "presume that the best interests of the child are served by an award of custody to the non-abusive parent[,]" a "different statutory scheme applies to custody determinations in divorce trials . . . . which addresses domestic violence as one of several factors requiring consideration." (citing N.J.S.A. 9:2-4)).

A-0382-19T1

2018]."[6]   The settlement agreement reiterated that "[t]he parties agree[d] to shared joint legal custody[,]" and specified that "[t]he parties shall share joint physical custody on an equal basis or . . . a [fifty-fifty] basis."

Regarding the children's general welfare, the agreement provided that the parties would "confer and agree on all major decisions, not [already] agreed to [herein]."  As to the children's education, the agreement expressly stated:

> 9. The parties agree the children of the marriage shall be educated in the Bridgewater School District through high school.
>
> 10. At least one parent shall remain residing in Bridgewater through high school so that the children can attend public school in Bridgewater through high school.

The Bridgewater-Raritan Regional School District is comprised of seven primary schools, two intermediate schools, one middle school, and one high school.  Notably, the agreement was silent as to which parent's address would be utilized to determine which of the district's primary and intermediate schools the children would attend.  However, the agreement did contemplate a change of address for defendant by providing that in exchange for defendant's "promise[] to vacate the shelter no later than [three] months from [the date of

_____

[6]  The April 27, 2018 order is not included in the record supplied by the parties.

the] agreement," plaintiff's father would "loan" defendant $12,000 "payable [once] defendant [was] under contract for affordable housing in Bridgewater." Both parties were represented by counsel and acknowledged entering into the agreement "freely and knowingly[,]" with "no coercion" or "duress."

Throughout the divorce proceedings, plaintiff resided in the marital residence, which was the children's address of record for school enrollment purposes, while defendant resided in the shelter with the children. After the divorce, plaintiff remained in the marital residence, and defendant moved to a condominium in Bridgewater in August 2018. After she moved, without consulting plaintiff, defendant used her new address to register the children in school, which resulted in the children being enrolled for the 2018 to 2019 school year in different schools from the schools associated with the marital residence.

Based on defendant's new address, the parties' son would begin intermediate school at Eisenhower Intermediate School, instead of Hillside Intermediate School. Their daughter would begin kindergarten at Milltown Primary School, instead of Hamilton Primary School, where her brother had just left. As a result, in September 2018, plaintiff filed an order to show cause to remove the children from the schools defendant had enrolled them in and return them to the schools associated with his address. On September 27, 2018,

5

plaintiff's application for injunctive relief was denied and converted to a motion, which was heard by Judge Bradford Bury on October 19, 2018.

Following oral argument, Judge Bury issued his decision on the record, which was memorialized in an October 19, 2018 order, granting "[p]laintiff's request to find [d]efendant in violation of litigant's rights for willfully violating and intentionally modifying the children's education institution without consent or a court [o]rder." Judge Bury found that defendant falsely created a misimpression with the school district as to her PPR status and the children's resulting primary residence. According to the judge, there was no PPR designation in the settlement agreement, and thus "neither party" could unilaterally "dictate" where the children attended school. Further, the judge noted that while the parties agreed that the children would attend the "Bridgewater . . . school system through the end of high school," there was no agreement about "which particular school or schools."

In that regard, Judge Bury, who had also presided over the divorce proceedings, expressly rejected plaintiff's contention that there was a "status quo" in place in relation to which address would be used to determine the children's school, and that the burden was on defendant to justify a change. The judge explained that plaintiff "[got] no presumption" that the children would

6

attend the schools associated with his address. Instead, both parents were obligated to consult with each other, particularly since both children "were now going to attend . . . new schools,"[7] and "they would equally have to present to the court reasons . . . why one school . . . would be more . . . beneficial to the [children's] . . . best interests over the other school."

The judge concluded that because the decision regarding the "particular . . . schools" constituted "a major decision," plaintiff "should have been consulted" in accordance with the settlement agreement. Nonetheless, the judge refused to "change the schools" and "disrupt[]" the children's education, noting that their son was excelling academically. Instead, the judge ordered defendant to pay plaintiff's counsel fees, and directed that if "the parties [were] unable to agree upon the [children's] school[s] . . . for the 2019 [to] 2020 school year by May 1, 2019, . . . the party seeking a change of school[s] shall file a motion . . . by May 30, 2019."[8]

---

[7] The judge was referring to the fact that the parties' son was leaving primary school and beginning intermediate school, and their daughter was beginning primary school.

[8] Defendant moved for reconsideration of Judge Bury's October 19 order, which was denied on December 14, 2018, and plaintiff filed a notice of appeal from Judge Bury's October 19 order, which was administratively dismissed for failure to prosecute on June 4, 2019. Judge Bury's December 14, 2018 order also denied

In July 2019, nearly two months after the May 30, 2019 deadline, plaintiff moved to use his address as the children's residence for school enrollment purposes for the 2019 to 2020 school year, as well as other unrelated relief. Defendant opposed the motion and cross-moved to be designated the PPR, as well as other relief. To support his motion, plaintiff submitted a certification reiterating that the burden of proof was on defendant to establish changed circumstances. Plaintiff also averred that the schools associated with his address were "superior to" defendant's, and submitted school rankings in support. Regarding the children's best interests, plaintiff stated that although their son had excelled academically, as evidenced by the report cards submitted for the 2018 to 2019 and earlier school years, he had "struggle[d] . . . socially" without his friends, leading to him gaining an "unhealthy [forty] pounds []in a year[]." Regarding their daughter, according to plaintiff, she would "benefit[] by attending Hamilton," which "[was] ranked higher than Milltown" because she "struggle[d] with reading th[e] past year." Defendant countered in a certification

---

plaintiff's cross-motion, which was not "germane" to defendant's reconsideration motion or pertinent to the issues raised in this appeal, but scheduled plaintiff's cross-motion "as a separate stand[-]alone [m]otion[,]" which was subsequently adjudicated on January 18, 2019.

that there was not much difference between the schools, a contention plaintiff agreed with in his reply certification.

Oral argument was conducted by Judge Kimarie Rahill on August 9, 2019, during which plaintiff's counsel requested as detailed in the papers that the judge conduct a plenary hearing and interview the parties' son to determine the children's schooling. Without conducting a child interview or a plenary hearing, in an August 28, 2019 order, Judge Rahill denied plaintiff's request to designate his address for school enrollment purposes for the 2019 to 2020 school year. In an accompanying statement of reasons, relying on Levine v. Levine, 322 N.J. Super. 558 (App. Div. 1999),[9] Judge Rahill determined that "a plenary hearing [was] not necessary because there [was] no genuine dispute of material fact regarding the parties' [settlement agreement]" and, other than plaintiff's unsubstantiated "conclusions," there was no "prima facie showing that one school would be in the best interest of the children as opposed to their current school." The judge also determined that a child interview was not necessary because "[t]he [c]ourt [was] not changing custody" and "decline[d] to use [its]

---

[9] See Levine, 322 N.J. Super. at 566-67 (holding that where joint custodians cannot agree on a choice of schools, the issue must be decided consistent with the child's "best interests" and, in that context, "any evaluation of a school district is inherently subjective" and involves "more than its teacher-student ratio or State ranking.").

discretion to interview the children regarding their choice of school." See R. 5:8-6 (authorizing the court to conduct "an in camera interview with the child(ren)" as "part of [a] custody hearing").

In rejecting plaintiff's contention that not using his address "disrupted the 'status quo'" and impermissibly placed the burden of proof on him to establish changed circumstances, like Judge Bury, Judge Rahill pointed out that the settlement agreement "does not provide a presumption on either side to use an address for school purposes," and "only require[d] the parties to enroll the children into the Bridgewater school district without specifying which school[s]." Further, Judge Rahill noted that in "requir[ing] the children to remain in their then-current schools[,]" Judge Bury had "indicated[] there was no status quo" and neither child had been "uprooted from an existing school." Because there was no "showing that either child [was] truly suffering in their current school[,]" Judge Rahill concluded there was no "change of circumstances since Judge Bury's [o]rder[] to warrant the extreme remedy of displacing the children from their current schools." Additionally, according to Judge Rahill, plaintiff failed to consider that their son "[would] be attending middle school for the 2020-2021 school year with all the children from both

intermediate schools because both intermediate schools filter into a single middle school." This appeal followed.

On appeal, plaintiff renews the same arguments rejected by both Judge Rahill and Judge Bury. However, we need not address plaintiff's arguments because the dispute is moot. "Mootness is a threshold justiciability determination rooted in the notion that judicial power is to be exercised only when a party is immediately threatened with harm." Betancourt v. Trinitas Hosp., 415 N.J. Super. 301, 311 (App. Div. 2010). "It is firmly established that controversies which have become moot or academic prior to judicial resolution ordinarily will be dismissed." N.J. Div. of Youth & Family Servs. v. W.F., 434 N.J. Super. 288, 297 (App. Div. 2014) (quoting Cinque v. N.J. Dep't of Corrs., 261 N.J. Super. 242, 243 (App. Div. 1993)). "[F]or reasons of judicial economy and restraint, courts will not decide cases in which the issue is hypothetical, [or] a judgment cannot grant effective relief . . . ." Cinque, 261 N.J. Super. at 243 (quoting Anderson v. Sills, 143 N.J. Super. 432, 437-38 (Ch. Div. 1976)). Likewise, "[a]n issue is 'moot' when the decision sought in a matter, when rendered, can have no practical effect on the existing controversy." Greenfield v. N.J. Dep't of Corrs., 382 N.J. Super. 254, 257-58 (App. Div. 2006) (citation omitted).

A-0382-19T1

Here, even if plaintiff prevailed in this appeal, our judgment would have no practical effect because the 2019 to 2020 school year has concluded, and any assessment of the children's best interests in the choice of schools for the 2020 to 2021 school year cannot be made on this record. More importantly, the parties' son is now attending the only middle school in the school district, rendering the registration address as to him irrelevant. Therefore, the appeal is moot. "Further, this is not an appeal where the issues raised 'involve significant matters of public policy, are extremely important, and undoubtedly will recur in cases that are likely to be mooted before adjudication.'" W.F., 434 N.J. Super. at 297 (quoting In re N.N., 146 N.J. 112, 124 (1996)). Thus, we must dismiss the appeal. See N.J. Div. of Youth & Family Servs. v. J.C., 423 N.J. Super. 259, 263 (App. Div. 2011).

Dismissed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION