**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4321-17T2

K.S.,

     Plaintiff-Respondent,

v.

J.S.,

     Defendant-Appellant.

_____

          Argued March 20, 2019 – Decided April 4, 2019

          Before Judges Reisner and Mawla.

          On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FM-13-0267-07.

          J.S., appellant, argued the cause pro se.

          K.S., respondent pro se.

PER CURIAM

Defendant J.S.[1] appeals from a post-judgment order dated April 12, 2018, which addressed issues of child support, college payments, and parenting time. We affirm in part, and reverse and remand in part, for the reasons set forth in this opinion.

We take the following facts from the record. The parties were married for more than six years when the court entered a judgment of divorce on October 19, 2006, incorporating a property settlement agreement (PSA). A daughter and son were born of the marriage, who are presently nineteen and seventeen years of age, respectively.

In May 2015, plaintiff K.S. filed a motion to enforce litigant's rights requesting defendant pay his portion of expenses set forth in the PSA and child support. Defendant filed a cross-motion to force the sale of the marital home, located in Hazlet, and restrict plaintiff from relocating out-of-state. The court directed the matter to mediation. The court subsequently signed an order dated September 3, 2015, setting defendant's child support obligation at $455 per week. On January 12, 2016, the court entered an order scheduling a case management conference to address the unresolved issues.

---

[1] We utilize initials to protect the parties' and the children's privacy.

A-4321-17T2

On September 9, 2016, the parties filed a consent order, which resolved the remaining issues.  The consent order stated the following:

CUSTODY AND PARENTING TIME

18.  Plaintiff shall continue to be the [parent of] primary residence and [d]efendant the parent of alternate residence.

19.  [The son] shall commute from Hazlet . . . to [New York City] during the week and if [d]efendant has a room set up for [the son], he will be allowed to have overnights with [d]efendant during the week, if [the son] so chooses. . . .  Defendant shall have one weekend per month with [the son], if [the son] is residing in NYC from Monday to Thursday, which shall be agreed upon at the beginning of the school year with the parties to make efforts to coordinate those weekends with functions in the city or defendant's holidays.  Plaintiff shall continue to remain the parent of primary residence of both children.

The consent order also required defendant to continue paying child support of $455 per week, and expressly contemplated the daughter's college attendance beginning in fall 2017, and the son's enrollment at a private high school in New York City in fall 2016.  The consent order specifically noted the fact the son's attendance of high school in New York City would not constitute a change in circumstances enabling a modification of child support.

The consent order also stated:

3

> The parties agree that each shall contribute toward their children's college education. College expenses shall include tuition, room and board, miscellaneous school fees, books, computer, supplies, transportation, meal plans, and any other college related costs and expenses which are not covered by student loans, grants, work-study or scholarships. The child shall accept all possible financial aid and subsidized Stafford loans available to him or her. Defendant has an income of approximately $167,000 per year after deducting his child support obligation and [p]laintiff has an income of approximately $58,000.00 per year including child support by [d]efendant. Based on the parties['] respective incomes, [d]efendant shall be responsible for seventy-five . . . percent and [p]laintiff shall be responsible for twenty[-]five . . . percent of any college expenses not covered by the child's financial aid as set forth above.

The parties also agreed to split the cost of the daughter's car insurance once she turned seventeen and obtained her driver's license.

In January 2017, plaintiff filed an order to show cause to transfer the son from his high school in New York City to a school in Bensalem, Pennsylvania, near her residence. The court granted the application.

In November 2017, defendant filed a motion, in pertinent part, to enforce the consent order's provisions concerning parenting time with the parties' son, and payment of the daughter's college expenses and car insurance. He also requested sanctions and attorney's fees due to plaintiff's refusal to mediate these issues. Plaintiff cross-moved to enforce litigant's rights, including the payment

4

of child support arrears, defendant's obligation for their daughter's car insurance, reimbursement of medical expenses, and contribution to their son's extracurricular activities.

The motion judge interviewed the parties' son in camera, but failed to record the interview. Subsequently, the judge signed the April 12, 2018 order, which denied defendant's requests for parenting time and modification of child support. In her written findings, the judge stated she considered the son's representation during the interview that he was seeing defendant "at least monthly and planned to continue to do so." Thus, the judge concluded "[i]n light of the child's age," it was not appropriate to order parenting time with defendant. The judge also found defendant did not present an "extreme change of circumstances that warrants modification of the parties' agreed upon parenting time schedule or child support."

The motion judge also denied defendant's request that plaintiff pay twenty-five percent of their daughter's college tuition pursuant to the consent order. Specifically, the judge stated:

> Based on the parties' [c]ertifications, this [court] finds that it is inequitable for [plaintiff] to contribute [twenty-five percent] towards college contribution. It is clear that [plaintiff] does not have the money to contribute more than what she already has. Therefore, this [c]ourt finds that [plaintiff] shall be obligated to

contribute <u>twenty[-]five percent</u> . . . towards college expenses at a rate consistent with an <u>in-state and public college/university</u>. [Plaintiff] has provided [defendant] with [$2000] . . . towards college expenses and so [plaintiff]'s obligation towards college expenses has been satisfied.

The motion judge also denied defendant's request for sanctions and counsel fees. The order granted plaintiff's cross-motion to enforce litigant's rights. This appeal followed.

## I.

"Appellate courts accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters." <u>Harte v. Hand</u>, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting <u>Cesare v. Cesare</u>, 154 N.J. 394, 412 (1998)). "We do 'not disturb the "factual findings and legal conclusions of the trial judge unless . . . convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice."'" <u>Gnall v. Gnall</u>, 222 N.J. 414, 428 (2015) (alterations in original) (quoting <u>Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am.</u>, 65 N.J. 474, 484 (1974)). Therefore, "[o]nly when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' should we interfere[.]" <u>Ibid.</u> (quoting <u>N.J. Div. of Youth & Family Servs. v. E.P.</u>, 196 N.J. 88, 104 (2008)). "We will reverse only if we find the trial judge clearly abused his or

A-4321-17T2

her discretion[.]" Clark v. Clark, 429 N.J. Super. 61, 72 (App. Div. 2012). However, "all legal issues are reviewed de novo." Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017) (citing Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

Defendant raises the following arguments on appeal: 1) the motion judge abused her discretion when she declined to enforce the parenting time provisions of the consent order with the parties' son; 2) when plaintiff opposed defendant's motion, she was actually seeking a modification of parenting time and the judge erred because she did not make any findings as to whether there was a change in circumstances; 3) the parenting time issue was not moot because, contrary to his representations, the parties' son had not been seeing defendant; 4) the judge interviewed the parties' son over defendant's objection and further erred when she did not make a recording of the interview; 5) the judge permitted the parties' son to schedule parenting time on his own, which essentially re-wrote the terms of the consent order; 6) the judge erred when she denied defendant's request for a downward modification of child support and failed to impute an income to plaintiff; 7) the judge erred when she found defendant had to establish an "extreme" change in circumstances in order to modify child support; 8) defendant established a change in circumstances because his income had

declined, his living expenses increased, plaintiff is voluntarily unemployed, and plaintiff's standard of living has increased by virtue of her cohabitation with a fiancé; 9) the judge erred when she did not enforce plaintiff's obligation to pay twenty-five percent of their daughter's college expenses and limited plaintiff's contribution without holding a plenary hearing or requiring her to complete a case information statement (CIS); and 10) the judge erred by failing to sanction plaintiff for refusing to attend mediation, as required by the consent order, and award defendant counsel fees for enforcing the order.

A.

Rule 5:8-6 empowers "the court . . . on its own motion or at the request of a litigant [to] conduct an in camera interview with the child(ren)." If a court chooses to conduct an interview with the child,

> Rule 5:8–6 mandates the court to: (1) conduct an interview with the child in camera; (2) "afford counsel the opportunity to submit questions for the court's use during the interview"; (3) "place on the record its reasons for not asking any question thus submitted"; (4) create and preserve a stenographic or recorded audio record of each interview in its entirety; and (5) provide transcripts of the interview(s) to counsel and the parties upon request and payment for the cost.
>
> [D.A. v. R.C., 438 N.J. Super. 431, 459 (App. Div. 2014) (quoting Peregoy, 358 N.J. Super. at 206) (quoting Rule 5:8-6).]

A-4321-17T2

Because the motion judge did not comply with these requirements, we must determine whether the oversight constitutes reversible error. Generally, to be reversible, error must be clearly capable of producing an unjust result. State v. Castagna, 187 N.J. 293, 312 (2006). If the error is harmless, it will be disregarded by the court. State v. Macon, 57 N.J. 325, 333 (1971). The prospect of an unjust result must be "sufficient to raise a reasonable doubt as to whether the error led the [fact-finder] to a result it otherwise might not have reached." Id. at 336.

Here, the motion judge arguably had enough evidence to adjudicate the parenting time dispute without conducting an in camera interview with the son because of the order permitting the son to change schools and the consent order granting him discretion to choose his residence. Moreover, at oral argument, defendant clarified he does not seek a remand for the motion judge to re-interview the parties' son because he opposed an interview from the onset. Therefore, although the judge erred by failing to record the interview, the error was harmless.

Furthermore, "the age-of-majority statute provides that . . . 'every person [eighteen] or more years of age shall . . . be deemed to be an adult,' N.J.S.A. 9:17B–3, in order to exercise 'the basic civil . . . rights' of adults, N.J.S.A.

9:17B–1(a)." N.J. Div. of Youth & Family Servs. v. W.F., 434 N.J. Super. 288, 296 (App. Div. 2014). "Adults normally are not under the custody of another." Ibid. "Therefore, the issue of custody of . . . children become[s] moot when they turn[] eighteen-years-old." Id. at 296-97. "It is firmly established that controversies which have become moot or academic prior to judicial resolution ordinarily will be dismissed." Id. at 297 (quoting Cinque v. N.J. Dep't. of Corr., 261 N.J. Super. 242, 243 (App. Div. 1993)). An appellate court will only decide a moot matter if the issues at hand "involve significant matters of public policy, are extremely important, and undoubtedly will recur in cases that are likely to be mooted before adjudication." In re N.N., 146 N.J. 112, 124 (1996).

As we noted, the parties' son is seventeen. He will become an adult in May 2019. A remand of this matter to re-interview the parties' son on the record, which defendant concedes he does not desire, would be an unwise expenditure of judicial resources given the circumstances.

### B.

We turn to the issues concerning child support and the terms of the matrimonial settlement agreement. Matrimonial settlement agreements are "'entitled to considerable weight with respect to their validity and enforceability' in equity, provided they are fair and just" because they are "essentially

A-4321-17T2

consensual and voluntary in character[.]" <u>Dolce v. Dolce</u>, 383 N.J. Super. 11, 20 (App. Div. 2006) (quoting <u>Petersen v. Petersen</u>, 85 N.J. 638, 642 (1981)); <u>see also</u> <u>Lepis v. Lepis</u>, 83 N.J. 139, 153 (1980). However, courts retain the equitable power to modify support provisions at any time. <u>Lepis</u>, 83 N.J. at 145.

The child support provisions of a matrimonial settlement agreement are subject to review and modification on a showing of changed circumstances. <u>Id.</u> at 146. Under that standard, the judge determines whether the agreement is fair, equitable, and if it "should receive continued enforcement without modification." <u>Id.</u> at 148–49. "Courts have consistently rejected requests for modification based on circumstances which are only temporary or which are expected but have not yet occurred." <u>Id.</u> at 151.

"The moving party has the burden of establishing a prima facie case of changed circumstances before discovery of the opposing spouse's finances will be ordered." <u>Stamberg v. Stamberg</u>, 302 N.J. Super. 35, 42 (App. Div. 1997) (citing <u>Lepis</u>, 83 N.J. at 157). "By prima facie is meant evidence that, if unrebutted, would sustain a judgment in the proponent's favor." <u>Baures v. Lewis</u>, 167 N.J. 91, 118 (2001). "When the movant is seeking modification of child support, the guiding principle is the 'best interests of the children.'" <u>Lepis</u>,

83 N.J. at 157 (quoting Hallberg v. Hallberg, 113 N.J. Super. 205, 209 (App. Div. 1971)).

In Lepis, the Court provided a non-exhaustive list of general principles in which courts have recognized as changed circumstances:

> (1) an increase in the cost of living . . .
>
> (2) increase or decrease in the supporting spouse's income . . .
>
> (3) illness, disability or infirmity arising after the original judgment . . .
>
> (4) the dependent spouse's loss of a house or apartment . . .
>
> (5) the dependent spouse's cohabitation with another . . .
>
> (6) subsequent employment by the dependent spouse . . .
>
> (7) changes in federal income tax law . . .
>
> [Lepis, 83 N.J. at 151 (citations omitted).]

"When children are involved, an increase in their needs — whether occasioned by maturation, the rising cost of living or more unusual events — has been held to justify an increase in support by a financially able parent[.]" Ibid.

Here, as we noted, defendant alleged a multitude of changed circumstances. However, the consent order contemplated many of these

12

circumstances, namely, the advent of college for the parties' daughter and the attendant cost of transportation, and the son leaving his school in New York City and residing with plaintiff. Other circumstances alleged by defendant existed and were known to the parties at the time they entered into the order, including defendant's cost of living in New York City, and plaintiff's unemployment and residence with her fiancé. Some circumstances alleged by defendant simply do not meet the bar to warrant modification of the consent order, namely, the fourteen percent drop in defendant's income, which the record does not establish was a permanent change.

We agree with defendant the motion judge employed the incorrect standard when she found he had not established an "extreme" change in circumstances. However, this too was harmless error because the objective evidence in the record did not demonstrate defendant had established a prima facie case for a change in circumstances pursuant to Lepis.

C.

We reach a different result regarding the motion judge's determination relating to the college contribution. The order lacked findings to support the judge's decision.

"In appropriate circumstances, parental responsibility includes the duty to assure children of a college . . . education." Newburgh v. Arrigo, 88 N.J. 529, 544 (1982). "Although the court will enforce an agreement to the extent it is just and equitable, when it appears no longer fair to do so, the court is not bound by the agreement or its prior orders." Moss, 289 N.J. Super. at 359 (citing Lepis, 83 N.J. at 146-48). Like any request to modify the terms of a matrimonial agreement, "if circumstances have changed in such a way that requiring defendant to pay for college would no longer be equitable and fair, the court also remains free to alter the prior arrangement." Id. at 359-60 (quoting Lepis, 83 N.J. at 161 n.12).

In Newburgh, 88 N.J. at 545, the Supreme Court set forth twelve factors for evaluating claims for contribution towards the cost of higher education, which are:

> (1) whether the parent, if still living with the child, would have contributed toward the costs of the requested higher education; (2) the effect of the background, values and goals of the parent on the reasonableness of the expectation of the child for higher education; (3) the amount of the contribution sought by the child for the cost of higher education; (4) the ability of the parent to pay that cost; (5) the relationship of the requested contribution to the kind of school or course of study sought by the child; (6) the financial resources of both parents; (7) the commitment to and aptitude of the child for the requested education; (8) the financial

resources of the child, including assets owned individually or held in custodianship or trust; (9) the ability of the child to earn income during the school year or on vacation; (10) the availability of financial aid in the form of college grants and loans; (11) the child's relationship to the paying parent, including mutual affection and shared goals as well as responsiveness to parental advice and guidance; and (12) the relationship of the education requested to any prior training and to the overall long-range goals of the child.

We have upheld the application of the Newburgh factors by a trial court, despite the presence of an agreement to fund college expenses. See Moss, 289 N.J. Super. at 359-60.

Here, the consent order required defendant to pay seventy-five percent, and plaintiff twenty-five percent, of the children's college expenses. The percentage of the parties' contributions was predicated on their incomes at the time and the financial aid received to offset the cost of college. However, the motion judge disregarded the consent order and concluded "it is inequitable for [plaintiff] to contribute [twenty-five percent] towards [the] college contribution. It is clear that [plaintiff] does not have the money to contribute more than what she already has." Citing plaintiff's certification, which the motion judge found credible, the judge limited plaintiff's "twenty[-] five percent [contribution] . . . towards college expenses at a rate consistent with an in-state and public college/university."

We are constrained to reverse the determination because there is no evidence the parties intended to limit their college cost obligation to an in-state or public college education. Indeed, the consent order does not impose such a limitation, and the parties' daughter was attending a private college in Vermont when the motion judge adjudicated the dispute.

Notwithstanding, the judge relied upon plaintiff's certification, which was disputed by defendant and offered no clarity. Indeed, at once, plaintiff's certification cited the in-state tuition cost of a four-year college in Pennsylvania, certified the parties' daughter "could have also attended [New York] public universities and received in-state tuition," and certified she believed at the time their daughter would be attending another university in Pennsylvania on a full scholarship. In an email submitted with her certification, plaintiff said that only if her contribution were limited to $2000 per year would she consent to the daughter attending private college.

The motion judge's order lacked the necessary findings of fact or conclusions of law to support her decision. R. 1:7-4(a). Instead, the order appears to be an amalgamation of the views expressed in plaintiff's certification. More was required because there was no objective evidence presented to the judge of plaintiff's inability to pay more than $2000 per year. Indeed, plaintiff

16

filed no CIS and her certifications only provided records of defendant's tax history and a screenshot of her bank account. The evidence presented could not permit a factfinder to determine plaintiff's college contribution either under the terms of the consent order or Newburgh, let alone support the result achieved here. For these reasons, we reverse and remand this aspect of the order, and direct the parties to present CISs to the motion judge, who shall then determine whether a plenary hearing is necessary to adjudicate the college contribution dispute. The judge shall state her findings of fact and conclusions of law.

D.

Finally, we reject defendant's argument the motion judge erred when she did not impose sanctions upon plaintiff for failing to attend mediation. We also reject defendant's assertion it was an error to not award him counsel fees.

Paragraph twenty-six of the parties' consent order required mediation in the event a party breached the terms of the order and required the party in breach to pay the costs of mediation. According to the record, defendant's attorney emailed plaintiff to schedule mediation. Plaintiff replied as follows: "Prior to scheduling any mediation we need a list of issues and positions because the party in the wrong is to pay mediator's fees. Please send me a list of issues your client is alleging and his positions." Defendant's counsel never proffered the list of

issues for mediation and instead scheduled a mediation. In response, plaintiff stated she would not attend mediation until she received a "clear and detailed list of issues from [his counsel], and specifically what [defendant]'s position [was on] each issue."

The motion judge determined defendant had "unilaterally scheduled mediation without [plaintiff]'s advice and consent. Further, [defendant] failed to communicate with [plaintiff] as to the issues that were to be addressed in mediation." We agree. Because mediation is an inherently voluntary process, plaintiff could not be compelled to attend without first understanding the issues in dispute and whether she was actually in breach to warrant a mediation.

We reach a similar conclusion regarding the motion judge's denial of counsel fees. "An allowance for counsel fees and costs in a family action is discretionary." Eaton v. Grau, 368 N.J. Super. 215, 225 (App. Div. 2004) (citing R. 4:42–9(a)(1)).

Here, the judge concluded plaintiff's cross-motion was in good faith and was successful. The judge determined defendant's application was in bad faith and he had the ability to pay his own counsel fees. The judge concluded the circumstances did not warrant an award of counsel fees to either party.

Our review of the record supports the motion judge's conclusions. Although the judge's determination of the college issue was erroneous, defendant's failure to identify the issues for mediation, unilateral scheduling of mediation, and subsequent haste to file an enforcement motion that was unsuccessful, supports a finding he did not act in good faith.

Affirmed in part, and reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION