**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0569-20

J.L.,[1]

    Plaintiff-Appellant,

v.

R.G.,

    Defendant-Respondent.

_____

        Submitted June 9, 2021 – Decided July 14, 2021

        Before Judges Whipple and Firko.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Cumberland County, Docket No. FM-06-0139-08.

        Brock D. Russell, attorney for appellant.

        Amy Smith, attorney for respondent.

PER CURIAM

---

[1] We use initials and pseudonyms to protect the parties' and the child's privacy. R. 1:38-3(d)(15).

Plaintiff J.L. appeals from post-judgment Family Part orders entered on August 18, September 9, September 23, and October 16, 2020, directing her to return the parties' then seventeen-year-and-four-month-old son "John" to defendant, R.G., who resides in Virginia, sanctioning plaintiff for not doing so, and awarding counsel fees to defendant. The parties' son turned eighteen years of age in May 2021. We affirm in part and reverse and remand in part for a plenary hearing on the issue of sanctions and attorney's fees, for the reasons set forth in this opinion.

I.

We summarize the pertinent history of this litigation. The parties were married for five years when the court entered a final judgment of divorce on December 11, 2007, and awarded custody of John to plaintiff, subject to reasonable rights of parenting time by defendant. Eleven years later, plaintiff filed an order to show cause (OTSC) seeking to designate defendant as the parent of primary residence of John and plaintiff as the parent of alternate residence. The record reveals that in 2019, John had behavioral and academic issues, and plaintiff became overwhelmed with parenting him, while dealing with a difficult pregnancy and "the stress of the pending birth." By consent, an order was entered on February 1, 2019, transferring residential custody of John to

2

defendant. John moved to Virginia and lived with his father on a full-time basis, subject to parenting time with plaintiff in New Jersey. This State retained jurisdiction.

After John moved to Virginia, he had disagreements with his father. John told his mother about the situation. Several times, at John's request, plaintiff drove to Virginia, but she admitted John seemed to "assimilate" in his new environment, showed improvement in his schoolwork, and "is now a changed young man" for the better. The parties agreed that John would spend some time with his mother during the summer of 2020.

In June 2020, John came to New Jersey and had parenting time with his mother, which was anticipated to last until the end of July. On June 23, 2020, defendant sent plaintiff an email to "coordinate" John's return to Virginia. However, by way of an email dated July 1, 2020, plaintiff advised defendant that John wanted to live in New Jersey with her and not return to Virginia. Defendant was under the impression that John would return to Virginia by July 13, 2020 to coincide with defendant's pre-arranged vacation plans approved by his employer. Plaintiff also informed defendant that she planned to file a motion to transfer custody of John back to her and be designated as his primary custodial parent.

3

On July 29, 2020, defendant filed an application in the State of Virginia to register and enforce the February 1, 2019 order, which he previously attempted to do unsuccessfully. On July 22, 2020, plaintiff, in fact, filed a motion seeking to change the terms of the consent order and transfer residential custody of John to her. On August 10, 2020, defendant again sent plaintiff a letter requesting that John be returned to him. Since John remained in New Jersey and school was commencing in Virginia on August 24, 2020, defendant filed an emergent OTSC on August 18, 2020, seeking to compel plaintiff to immediately return their son back to Virginia. That same day, John sent defendant an email stating:

> Hey [d]ad it's [John] I wanted to express myself on how I feel with the situation at hand regarding you claiming that my mom is "preventing" me from talking to you. You are my dad and I don't want to ruin that relationship but you clearly are trying to lie about my mom saying she's preventing me from talking to you. What she says is absolutely true I refused to talk to you multiple times even though she said I should call you. I want to stay with my mom and you need to respect that, not as a friend not as an adult as my dad. You fighting for another year of drama and me running away because me and you do not get along is gonna result in ruining the father son relationship we could have. I love you I love [Isabel] and [Clara] but you are making this a lot harder than it needs to be nor are you helping me. I promise that you hiring lawyers to lie and talk bad about my mom is not gonna work because when I go to the court date with my mom and express how I

4

feel and where I wanna be I promise you I am not coming back, not to wrestle and fight, not to argue, not to yell at the top of my lungs with you. I will make it as hard as it needs to be cause I do not wanna be there. If you feel as if you don't like this email call me and we can talk about it, and [w]e can bring it up instead of sarcastically acting like life is all good and dandy. So the choice is yours make it harder for yourself or make it easy and accept the fact that I'm not coming back.

Without defendant's consent, plaintiff arranged for John to perform his schoolwork online, tried to enroll him at Vineland High School, and disenroll him from his high school in Virginia. The judge entered an order on August 18, 2020, directing plaintiff to return John to defendant's custody. In his decision, the judge concluded that John's desire to live in New Jersey coupled with plaintiff's support for same, did not constitute a prima facie change of circumstances on the issue of custody or give rise to the need for a plenary hearing. On August 20, 2020, defendant's counsel sent plaintiff a letter enclosing the August 18, 2020 order and advising that defendant made arrangements to pick up John from plaintiff's home on August 22, 2020, at 9:00 a.m. Plaintiff sent defendant an email advising that John ran away, but he returned to her residence in New Jersey where he wanted to stay.

According to plaintiff, John ran away on August 22, 2020 because his "wishes" were ignored, prompting her to notify defendant and the Vineland

A-0569-20

police department of same. In an email, plaintiff blamed defendant for John's absconding and stated, "if something happens to my son it will be your fault for being a bully." John returned to plaintiff's residence two days later on August 24, 2020, but she made no plans to return John to his father's care. Plaintiff claimed that every time she told John he must return to Virginia to live with defendant, the child ran away. On August 25, 2020, counsel for defendant sent a letter to the judge seeking assistance in enforcing the August 18, 2020 order to return John to his father in Virginia.

On September 9, 2020, the return date of defendant's OTSC, the judge conducted a hearing via Zoom. In the court's amplification dated November 4, 2020, the judge recognized that John wished to live in New Jersey. The judge also stated that "the child clearly appeared on [J.L.'s] Z[oom] [h]earing screen in the background of the proceeding." It is unclear from the record whether the judge was aware of plaintiff's pending motion to transfer custody at the time of the OTSC hearing. Plaintiff claims she requested that the judge interview John, but the judge declined to do so.

After considering the parties' arguments and documents submitted, the judge determined "there has been no change of circumstances to justify a change in custody" and ordered that John "be immediately returned back to his home in

6

Virginia to the custody of the [d]efendant." The judge found that John "had been living in Virginia for about a year or more, had done well there, had improved in his behavior, and had improved and done well in his schoolwork, receiving good grades."

In addition, the judge recognized that plaintiff asserted her position "had improved" after the birth of the child, and because John had "changed," she wanted him to now live with her. Noting his frustration with "a refusal of law enforcement agencies" to enforce court orders, the judge requested assistance from the Cumberland County Sheriff's Department in enforcing the order. On September 14, 2020, the day defendant arranged to pick up John, plaintiff notified defendant via email that John "ran off again," and she filed a missing person complaint with the Vineland police department. This prompted defendant's counsel to send another letter to the judge on September 16, 2020, seeking guidance relative to enforcement of the judge's orders.

In light of plaintiff's "apparent obfuscation and refusal to honor" the judge's orders to return John to defendant, the judge entered another order on September 23, 2020, in response to the letter submitted by defendant's counsel to make the September 9, 2020 order "more specific with a particular place and time for the child to be returned to his father." The amended order provided that

7

plaintiff was to bring John to the Stafford County Sheriff's Office in Stafford, Virginia by 5:00 p.m. on Friday, September 25, 2020, and highlighted the judge's continued frustration with "local law enforcement" in securing John's return to Virginia. The order indicated that the judge "will" consider per diem economic sanctions and attorney's fees if plaintiff failed to comply with the terms of the order.

After plaintiff failed to comply with the judge's September 23, 2020 amended order, defendant's counsel sent another letter to the judge dated October 16, 2020, with a copy to plaintiff, requesting a further amendment to the September 23, 2020 order, requiring John to be returned to his father. Counsel enclosed a proposed form of order with the October 16, 2020 letter for the judge's signature based on plaintiff's "refusal" to honor the prior orders of the court. The judge signed the order on October 16, 2020, and required that plaintiff return John to the Stafford County Courthouse on October 21, 2020. The judge advised the parties that if plaintiff did not do so, a hearing as to her failure to comply with the four orders entered on this issue would be held on October 23, 2020.

The October 16, 2020 order also provided that if plaintiff failed to bring John to the Stafford County Sheriff's office as directed, she would be sanctioned

A-0569-20

$50 per day for each day thereafter she failed to comply. In addition, the judge found plaintiff "demonstrated bad faith in this matter by her failure to comply with the [c]ourt's [o]rders," and ordered plaintiff to contribute $3300 towards defendant's counsel fees and costs within sixty days. No formal notice of motion was filed by defendant's counsel under Rule 1:6-2(a)[2] in respect of the entry of sanctions and assessment of counsel fees against plaintiff. And, no affidavit or certification of counsel in support of the counsel fee request appears in the record. The judge also did not explain the reason for awarding counsel fees pursuant to Rules 5:3-5(c) and 4:42-9.

After not returning John to Virginia in accordance with the prior orders of the court, on October 21, 2020, plaintiff filed an emergent OTSC requesting a

---

[2] Rule 1:6-2(a) provides: An application to the court for an order shall be by motion, or in special cases, by order to show cause. A motion, other than one made during a trial or hearing, shall be by notice of motion in writing unless the court permits it to be made orally. Every motion shall state the time and place when it is to be presented to the court, the grounds upon which it is made and the nature of the relief sought . . . . The motion shall be accompanied by a proposed form of order in accordance with [Rule] 3:1-4(a) or [Rule] 4:42-1(e), as applicable. The form of order shall note whether the motion was opposed or unopposed. If the motion or response thereto relies on facts not of record or not subject of judicial notice, it shall be supported by affidavit made in compliance with [Rule] 1:6-6. The motion shall be deemed uncontested and there shall be no right to argue orally in opposition unless responsive papers are timely filed and served stating with particularity the basis of the opposition to the relief sought.

stay of the October 16, 2020[3] order contending the order was entered without a hearing being conducted and was "based off letters from defendant[']s attorney," because no formal motion was filed. Plaintiff certified that John "remains a missing juvenile" who did not want to return to his father's custody in the face of "verbal, mental and physical abuse."

On October 22, 2020, the judge denied plaintiff's OTSC because no irreparable harm was shown, and a hearing was to be held the next day. The judge also denied her request for a stay pending appeal. A hearing was conducted via Zoom the next day on October 23, 2020. At the hearing, plaintiff testified, "I don't know how I can produce a missing juvenile. I don't know where [John] is. He is missing. I entered him missing into the MPIC[4] system through the Vineland Police Department." The judge noted plaintiff appeared to have a "calm appearance and demeanor while talking of her missing son," leading the judge to conclude plaintiff was "not being truthful" about John's whereabouts. The judge continued to enforce the orders he previously entered.

---

[3] Plaintiff's emergent OTSC application incorrectly refers to an order of October 18, instead of October 16, 2020.

[4] MPIC stands for "Missing Person Information Center."

A-0569-20

Thereafter, plaintiff retained counsel, who filed an emergent motion for stay of the four subject orders, which was opposed.

On November 5, 2020, we entered an order denying plaintiff's motion for a stay pending appeal and concluded she did not satisfy the four criteria for emergent relief set forth in Crowe v. De Gioia, 90 N.J. 126, 132-34 (1982).[5] In our order, we stated:

> However, we suggest that the trial court exercise its discretionary authority under Rule 5:8-6 and interview the child, [John]. Given his age of almost seventeen-and-a-half years of age, an in camera interview might provide some valuable insight to the court as to why [John] does not want to return to his father in Virginia. See D.A. v. R.C., 438 N.J. Super. 431, 454-55 (App. Div. 2014). [John's] age and level of maturation may have reached a point that "it would be physically futile and emotionally counterproductive" to compel him to live with his father. Id. at 453.

On December 16, 2020, the judge sua sponte conducted an interview of John. However, the record does not indicate the results of the in camera

---

[5] A party seeking injunctive relief, such as a stay, must demonstrate that: (1) the moving party will suffer irreparable harm if the injunction does not issue; (2) the claim for relief is based upon an established legal right; (3) the moving party has a substantial likelihood of success on the merits of the case; and (4) the balance of the equities favor the moving party. Ibid.

interview by the judge, and no transcript of the in camera interview was provided in the appendices. This appeal ensued.[6]

On appeal, plaintiff argues two points:

> (1) the judge erred by refusing to interview the parties' then seventeen-and-a-half-year-old son John and by refusing to conduct a plenary hearing prior to his peremptory denial of plaintiff's motion to transfer custody; and
>
> (2) the judge erred by signing an order submitted by defendant's counsel and assessing attorney's fees and per diem sanctions against plaintiff without conducting a hearing.

## II.

Our scope of review of child custody determinations is exceedingly limited. The conclusions of Family Part judges regarding child custody are "entitled to great weight and will not be lightly disturbed on appeal." DeVita v. DeVita, 145 N.J. Super. 120, 123 (App. Div. 1976); see also Sheehan v. Sheehan, 51 N.J. Super. 276, 295 (App. Div. 1958). And, our review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998); see also Gnall v. Gnall, 222 N.J. 414, 428 (2015). We accord deference to the Family Part

---

[6] On February 25, 2021, we granted plaintiff's motion to file her appellate brief as within time and denied her motion for a limited remand to address emancipation.

judges due to their "special jurisdiction and expertise in family matters."  Cesare, 154 N.J. at 413.  The judge's findings are binding so long as they are "supported by adequate, substantial, credible evidence."  Id. at 412.

We will not "disturb the 'factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'"  Id. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).  "Only when the trial [judge's] conclusions are so 'clearly mistaken' or 'wide of the mark' should we interfere to 'ensure that there is not a denial of justice.'"  Gnall, 222 N.J. at 428 (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)).

A judgment involving the custody of minor children is subject to modification at any time based on significant changed circumstances that would affect the welfare of the child.  Beck v. Beck, 86 N.J. 480, 497 (1981); M.P. v S.P., 169 N.J. Super. 425, 431 (App. Div. 1979).   The court's primary consideration is the best interests of the child.  V.C. v. M.J.B., 163 N.J. 200, 227-28 (2000); Kinsella v. Kinsella, 150 N.J. 276, 317 (1997).  The court must focus on the child's "safety, happiness, physical, mental and moral welfare."

Fantony v. Fantony, 21 N.J. 525, 536 (1956). As part of the analysis, the judge must consider the following factors:

> the parents' ability to agree, communicate and cooperate in matters relating to the child; the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; the interaction and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; the needs of the child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes; the extent and quality of the time spent with the child prior to or subsequent to the separation; the parents' employment responsibilities; and the age and number of the children. A parent shall not be deemed unfit unless the parents' conduct has a substantial adverse effect on the child.
>
> [N.J.S.A. 9:2-4(c).]

A party seeking a change in custody bears the burden of making a prima facie showing of a change in circumstances that affects the welfare of the child. Sheehan, 51 N.J. Super. at 287; Faucett v. Vasquez, 411 N.J. Super. 108, 119 (App. Div. 2009). A plenary hearing is required where there is a "genuine and substantial factual dispute regarding the welfare of the children, and the trial judge determines that a plenary hearing is necessary to resolve the factual

14

dispute." Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007); see also R. 5:8-6 (requiring the court to "set a hearing date" if it "finds that the custody of children is a genuine and substantial issue"); Mackowski v. Mackowski, 317 N.J. Super. 8, 10-11 (App. Div. 1998) (requiring a plenary hearing where the teenaged child expressed preference to live with her father).  As part of the plenary hearing, "the court may on its own motion or at the request of a litigant conduct an in camera interview with the child(ren)." R. 5:8-6.

Our careful review of the record reveals plaintiff never formally requested that the judge conduct an in camera interview of John under Rule 5:8-6 in her application to the court.  Plaintiff merely verbally expressed to the judge, "I wish you could just speak to him," at the September 9, 2020 OTSC hearing.  This is insufficient to constitute a meaningful request to interview John under Rule 5:8-6.  Moreover, the judge correctly noted in his amplification that such an interview is "optional" by the court.

Here, the judge was faced initially with arguments that amounted to no more than a disagreement about who John should live with.  The judge's oral opinion reflects his examination of the evidence and assessment of the custodial arrangement, which was benefitting John.  There was no evidence of physical or psychological abuse by defendant, and the judge correctly determined under

Hand that there was no prima facie showing by plaintiff of a substantial change of circumstances warranting a transfer of custody of John to her. These findings are entitled to our deference. Donnelly v. Donnelly, 405 N.J. Super. 117, 126 (App. Div. 2009); Cesare, 154 N.J. at 394. No plenary hearing was required on the custody issue itself. And, the clear language of Rule 5:8-6 provides that "the judge's interview with the child is discretionary rather than mandatory irrespective of the age of the child." Pressler & Verniero, Current N.J. Court Rules, cmt. 1.4.3 on R. 5:8-6 (2021). Therefore, we reject plaintiff's contention that the judge erred by refusing to interview John or conduct a plenary hearing on the transfer of custody issue.

## III.

We now turn to plaintiff's argument that the judge erred by signing an order submitted by way of a letter by defendant's counsel and assessing attorney's fees and per diem sanctions against her without conducting a hearing.

When the litigation began in summer 2020, John was less than eighteen years old. He was therefore within the scope and purpose defined under our Legislature's goals defining a minor child as "under the age of eighteen years," N.J.S.A. 3B:12-69; accord N.J.S.A. 43:10-18.1, 43:13-22.3; see also N.J.S.A. 2A:34-54 (defining "[c]hild" as "an individual who has not attained [eighteen]

years of age" for purposes of the Uniform Child Custody Jurisdiction Act).  In determining when a parent's obligation of financial support ends, "[a]ttainment of age [eighteen] establishes prima facie, but not conclusive, proof of emancipation."  Newburgh v. Arrigo, 88 N.J. 529, 543 (1982).

Finally, the age-of-majority statute provides that, subject to limited exceptions inapplicable here, "every person [eighteen] or more years of age shall in all other matters and for all other purposes be deemed to be an adult," N.J.S.A. 9:17B-3, in order to exercise "the basic civil . . . rights" of adults.  N.J.S.A. 9:17B-1(a).  See Green v. Auerbach Chevrolet Corp., 127 N.J. 591, 594-99 (1992).  Adults normally are not under the custody of another.  N.J. Div. of Youth & Fam. Servs. v. W.F., 434 N.J. Super. 288, 296 (App. Div. 2014); see also Ort v. Ort., 428 N.J. Super. 290, 295-98 (Ch. Div. 2012) (ruling that a child who turns eighteen may seek her own emancipation over parental objection) and N.J.S.A. 9:6-8.54(c) ("No placement may be made or continued under this section beyond the child's eighteenth birthday without his consent.")[7]

Here, we have the perplexing situation of an almost adult-aged child who ostensibly refused to return to his father in Virginia.  Law enforcement would

_____

[7] We do not address the situation of persons with mental or physical disabilities.

not assist in the process. And, plaintiff contends John adamantly refused to go. This created a genuine and substantial dispute regarding John's welfare. The child appears to have been in a crisis mode. A plenary hearing should have been held in this case on the issue of sanctions. We cannot condone short-circuiting the evaluative process courts must undertake before sanctioning a litigant as was done here. Therefore, we reverse the October 16, 2020 order insofar as it assessed per diem sanctions against plaintiff, and we remand for the judge to conduct a plenary hearing on this issue. The judge should take into consideration not only the fact that John was obstinate about going back to Virginia, but also plaintiff's testimony, whatever was gleaned from the judge's in camera interview of the child, and his reaching the age of eighteen in May 2021.

As to the issue of counsel fees, we also reverse and remand. Rule 5:3-5(c),[8] requires a formal, detailed analysis by the court. What occurred here

_____

[8] Pursuant to Rule 5:3-5(c) the court may consider:

> (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5)

contravened not only Rule 1:6-2(a) but Rules 5:3-5(c) and 4:42-9 as well. Instead of requiring defendant's counsel to file a formal motion for counsel fees, the judge signed the proposed order enclosed with counsel's letter and awarded $3300 in fees. The judge had no authority to award counsel fees in this procedural context. Plaintiff had no opportunity to oppose the letter request for counsel fees. Nor did the judge consider or analyze the Rule 5:3-5(c) and 4:42-9 factors.

In sum, we affirm the August 18, September 9, and September 23, 2020 orders. We reverse, vacate, and remand as to the October 16, 2020 order to the extent the judge issued sanctions and awarded counsel fees. The judge shall conduct a hearing on the issue of sanctions and counsel fees consistent with the reasons expressed in this opinion.

Affirmed in part, reversed, vacated, and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.