# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2696-20

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

L.B.,

      Defendant-Respondent,

and

P.K.,

      Defendant-Appellant/
      Cross-Respondent.

_____

IN THE MATTER OF M.K.
and N.K., minors.

_____

      Submitted March 21, 2022 – Decided June 21, 2022

      Before Judges Rothstadt and Mayer.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FN-04-0325-20.

Theodore J. Baker, attorney for appellant/cross-respondent P.K.

Afonso Archie & Foley, PC, attorneys for respondent L.B. (Eric R. Foley, of counsel and on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor/cross-appellant M.K. (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Margo E. K. Hirsch, Designated Counsel, on the briefs).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor N.K. (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Nancy P. Fratz, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

In this action filed under Title Nine, N.J.S.A. 9:6-8.21 to -8.73, and Title Thirty, N.J.S.A. 30:4C-12, defendant P.K. (Phil)[1] appeals from the Family Part's May 20, 2021 order denying his Rule 4:50-1(f) motion that sought to amend the trial court's December 7, 2020 order that terminated the litigation with the consent of all parties. In his motion, Phil requested the order be

---

[1] We use initials and pseudonyms to protect the privacy of the sexual abuse victim and preserve the confidentiality of these proceedings. R. 1:38-3(c)(9).

amended to include a statement that "either party may file an application with the court regarding custody and parenting time without a further showing of a substantial change in circumstances," as it related to Phil's and defendant L.K.'s (Lisa's) now fourteen-year-old daughter N.K. (Nancy) and their now adult son M.K. (Mike). According to Phil, he and Lisa agreed that the provision should have been added to the December 7 order and the motion judge erred by refusing to follow their agreement when they initially, informally asked for it to be part of an order and again later when the judge denied Phil's motion that was filed months later.

According to Phil, the inclusion of the clause was an integral part of his consent to terminate the litigation and his decision to waive his right to a custody hearing. He also argues that the practical effect of the motion judge's refusal to include the provision negotiated by the parties was the denial of his due process rights and his right to seek custody in his and Lisa's divorce action (the FM action).[2]

---

[2] The Family Part hears various matters designated by specific docket types. As the Supreme Court has explained.

> FM, consists of divorce, marriage nullity, and separation maintenance matters. Other docket types include: FD, which consists of child custody,

A-2696-20

Mike, through his Law Guardian, cross-appeals from the same order. He supports Phil's appeal and asserts that the motion judge should have conducted a best interests of the child hearing before terminating the litigation and directing that custody of his sister be awarded to Lisa and not to Phil, who was awarded custody of Mike.

Lisa and Nancy through her Law Guardian, oppose both Phil's and Mike's contentions and urges us to affirm. Notably, plaintiff the New Jersey Division of Child Protection and Permanency (the Division) takes no position on the appeals.

We have carefully reviewed the arguments made on appeal, the record of the proceedings before the trial court, and the applicable principles of law. We now affirm, substantially for the reasons expressed by Judge Linda W. Eynon

_____

visitation, child support, paternity, medical support, and spousal support in non-divorce matters; FN, which consists of abuse and neglect matters; FG, which includes termination of parental rights matters; FC, which consists of child placement review matters; FL, which consists of kinship legal guardianship matters; and FV, which consists of domestic violence matters.

[N.J. Dep't of Child. & Fams., Div. of Youth & Fam. Servs. v. I.S., 214 N.J. 8, 22 n.3 (2013).]

in her oral decision placed on the record on the same date the challenged order was entered.

I.

The facts developed before the trial court as taken from the record are summarized as follows. In 2017, while the parents were involved in an acrimonious divorce, the Division became involved with the family after receiving several referrals that included allegations of physical and sexual abuse and neglect against both parents.[3] Although "the allegations were not established," the Division "determined there was evidence that the children were harmed or placed [at] risk of harm." Nonetheless, "[t]he case was closed at intake" because "the family case was being monitored by the court."

Sometime in 2018, the parties divorced. Evidently, as part of their judgment of divorce,[4] Phil was awarded residential custody of the children, as recommended by a psychologist's custody evaluation. Thereafter, until December 2019, Phil was the parent of primary residence for both children.

---

[3] At some point a restraining order was filed in favor of Phil against Lisa, and thereafter Phil was awarded temporary custody of both children; however, Nancy refused to live in Phil's home and another allegation of sexual abuse was lodged, which Nancy denied.

[4] The appendices do not include a copy of the divorce judgment.

A-2696-20

In November 2019 the Division received another referral, alleging the sexual abuse of Nancy by Phil. In this regard, Nancy's teenage friend reported to Lisa, and later caseworkers, that Nancy "disclos[ed] that she lost her virginity to [Phil]." She also reported that "there were rumors at school that [Nancy] lost her virginity to her brother [Mike]."

The matter was reported to law enforcement and thereafter the Camden County Prosecutor's Office (CCPO) interviewed Nancy and her teenage friends. At the time, Phil retained counsel and refused to speak with investigators. At the end of the interviews, CCPO reported that "there was no disclosure from [Nancy] and the information from the two [teenage] witnesses . . . [was] hearsay." Therefore, CCPO declined to "press any charges [because] there [was] not enough evidence." However, the Division continued to investigate by interviewing all family members and conducting inspections of their respective homes.

From December 8, 2019 to December 11, 2019, the Division received additional referrals of sexual abuse of Nancy by Phil. This time, Nancy confirmed the allegations during a therapy session with a certified counselor.

On December 11, 2019, Lisa obtained an order in the FM action granting her temporary supervised custody of Nancy. However, the court in that action

stated that its order would expire in two days "unless the Division otherwise acts with a removal action or [Phil was] indicted for sexual abuse or similar charges."

On the same day, the Division conducted an emergency removal of Nancy from Phil's house. Two days later, the Division filed its verified complaint in this case alleging abuse and neglect against Phil and Lisa under Title Nine and for the custody, care, and supervision of Nancy and the care and supervision of Mike under Title Thirty. In particular, the complaint detailed the November 2019 allegation of the sexual abuse of Nancy by Phil as well as allegations of physical abuse of Mike by Lisa.

On December 13, 2019, Judge Eynon held a hearing in this action on the Division's verified complaint. Thereafter, she entered a consent order under the FN docket, which among other things, converted the action against Lisa to one for care and supervision; continued Lisa's temporary supervised custody of Nancy; awarded Phil temporary custody of Mike; and, because of the sexual abuse allegations, suspended Phil's contact with Nancy. The judge maintained that custodial arrangement throughout the litigation. In an order entered on January 16, 2020, the judge terminated the need for supervision of Lisa's custody of Nancy and, in April 2020, the judge denied the Division's motion to

7

reinstate custody supervision. Later that same month, the judge issued an order, which among other things, scheduled the fact-finding hearing regarding allegations against Phil for June 23, 2020.

The next month, the Division filed an amended complaint that detailed numerous allegations of sexual and physical abuse of Nancy by Phil, physical abuse of Mike by Lisa, and potential inappropriate coaching of Nancy by Lisa. The complaint sought the custody, care, and supervision of Nancy, and continued care and supervision of Mike. On the same date, the Division issued a report to the court noting that the November 2019 allegations of sexual abuse by Phil "were [u]nfounded" and asserting that Nancy was having repeated absences from school while in Lisa's care.

On June 2, 2020, the judge ordered, among other things, evaluations,[5] continued therapy for the children, the dismissal of the Division's complaint

---

[5] According to the Division's amended complaint, Nancy underwent a Comprehensive Psychological/Sexual Abuse Evaluation from January 21, 2020 to March 3, 2020. After which, the evaluator "hypothesized that [the certified counselor] and/or [Lisa] may have exerted influence over [Nancy's] statements of sexual abuse by [Phil]." The Division's amended complaint also noted that the evaluator had "concerns regarding [the certified counselor's] use of leading questions to elicit information, as well as concerns regarding [her] qualifications as a therapist as [she] herself indicated that she is a 'trauma counselor' who uses yoga and medi[tation] to release stress from the body." The Division quoted the evaluator as "conclud[ing] that 'taken together the

under Title Nine against Lisa because "it ha[d] not met its burden of proof [and] granting the complaint would cause more harm than good" to Nancy, but directed the Division to "maintain care and supervision."

On June 22, 2020, one day before the fact-finding hearing was to occur, Judge Eynon dismissed the Title Nine action against Phil but determined by a "preponderance of the relevant evidence that [Phil] is part of a family in need of services" and found that it would be in the best interest of the children to maintain the Title Thirty action. On the same day, the judge issued another order directing, among other things, that Nancy and Mike attend sibling therapy, denying the request to terminate litigation, and continuing Phil's restraint from having any contacting with Nancy.

In September 2020, after a compliance review hearing, the judge issued an order, which among other things, denied a request for termination of the litigation, lifted Phil's no-contact restriction with Nancy at her discretion and with therapist's guidance, continued Lisa's custody of Nancy with visitations

_____

many dynamics in play with this family, as well as the possible influence of [certified counselor's] services, makes [it] challenging to determine whether certain events did or did not occur' and 'it is important that the individual charged with making decision[s] regarding the outcomes in this case consider all the available information in making their determination.'"

with Phil in a therapeutic setting, if Nancy was willing to do so, and continued Phil's custody of Mike.

Two months later, in November 2020, the judge addressed terminating the litigation. In pertinent part, the judge ordered that, while she agreed to the parties' request to terminate the litigation, she would not do so until November 20, 2020, to allow the judge to "further assess terminating litigation and to ensure [Mike] and [Nancy] attend [a] therapy session . . . on [November 19, 2020]." In addition, the judge's order continued Lisa's custody of Nancy with visitations with Phil at Nancy's discretion, continued Phil's custody of Mike with visitations with Lisa at Mike's discretion, and therapeutic sibling visitations.[6]

A few days later, on November 20, 2020, the judge issued an order, which rescheduled the matter to December 7, 2020 because the therapeutic sibling visitation session did not occur as previously directed. The judge ordered counsel to arrange for another sibling therapy session. [7]

---

[6] A transcript of this hearing is not part of the appeal record.

[7] A transcript of this hearing is not part of the appeal record.

Prior to the December 7, 2020 hearing, counsel participated in an off-the-record conference with the judge wherein they submitted a proposed order,[8] which, according to Phil, was to be entered in the FM action where the parties would continue to litigate custody and parenting time, and included an agreed-upon provision that any future applications regarding a change of custody or parenting time would not require a "showing of a substantial change in circumstances." Judge Eynon would not agree to signing an order that included that provision.

Despite the judge's rejection of the proposed language, neither party objected to the termination of the litigation. Moreover, and significantly, neither parent nor the Law Guardians asked the judge to convene a dispositional best interest hearing as to the children's custody or Phil's or Lisa's parenting time.

At the ensuing hearing conducted on the record that day, the judge issued an order terminating the litigation with the parties' consent. In pertinent part, the order stated the following:

---

[8] According to Phil, during the virtual conference held via Zoom. Lisa's attorney emailed to the judge and counsel "draft language for such an order." On appeal, Lisa notes that the provision was "discussed but a completed agreement consented to by all of the parties under a matrimonial docket was never completed."

1.  With consent of all counsel, the [c]ourt terminates FN litigation. This matter will remain open administratively through the Division.

2.  Minor, [Nancy], shall continue to receive/attend therapy . . . . Minor, [Mike], may be incorporated into the therapy once [Nancy] a[n]d [the therapist] deem it to be appropriate.

3.  [Lisa] shall maintain temporary custody of minor, [Nancy]. [Phil] shall maintain temporary custody of minor, [Mike].

4.  [Lisa] shall have no uninvited contact with minor, [Mike]. [Phil] shall have no uninvited contact with minor, [Nancy]. Without further order of the court and with the consent of the respective children, the contact may include but not be limited to messages, phone calls, in person contact and therapeutic contact.

5.  All parties shall comply with the monthly visitation requirements until the Division's case is closed administratively.

Evidently, the next month, Phil filed a motion for a change in custody and/or parenting time in the FM action. According to Phil, that was the first time he became aware that Judge Eynon did not sign a consent order in the form the parties had proposed earlier. A different Family Part judge denied his motion.[9]

---

[9]  Again, we have not been provided with a copy of the order.

12

In April 2021, Phil filed a motion in the FN action "[f]or the execution of the form of Order presented to the [c]ourt on or December 7, 2020, under FM-04-494-18," that sought to have Judge Eynon "execute the [c]onsent [o]rder prepared by [Lisa]'s counsel which gives the parties the right to return to the FM docket to address issues of custody without a showing of a substantial chan[g]e in circumstances." Lisa opposed the motion. According to her, the proposed language was the subject of a negotiation with Phil that was never concluded. Mike, through his law guardian, expressed his position that he "side[d] with his father [and] want[s] his sister home." Nancy, through her law guardian, expressed her position that she "want[s] to remain with her mother."

Judge Eynon considered the parties' oral arguments on May 20, 2021. Early in his argument, Phil's attorney made clear that Phil sought the ability to have a custody hearing in the FM action without having to make a showing of changed circumstances.

On the same day, Judge Eynon denied the motion and issued an oral decision setting forth her reasons. In her decision, the judge made clear that no permanent custody determinations were made in the FN matter because

none of the parties asked for a best interest hearing in the FN action. Specifically, the judge stated the following:

> [This] case was brought by the [Division] after years of acrimony between the two parties, [Lisa] and [Phil], with respect to a whole host of issues, pre-divorce and post-divorce.
>
> But, the issue that brought this case [to this court were] the allegations by [Nancy] that her father had sexually abused her. The Division did not find a basis for that finding. However, while that was explored the case remained open and services were provided.
>
> But, the bottom line from the beginning to the end of this case is that this is what [Nancy] believed and everyone [in] this [hearing] knows that. And without extensive therapy, which [Nancy] . . . is engaged in . . . we were never going to be able [to] conclu[de the Title Nine] case to reunite [Nancy] with [Phil]. She didn't want to see him. In her mind he had sexually abused her.
>
> . . . .
>
> It is clear to this [c]ourt that because [Phil] did not like my decision with respect to [Nancy] that he thought [he could] go to another court and get a better answer.
>
> This case was closed procedurally properly under the F.N. docket. At no time, and I repeat, at no time was a custody hearing requested by any party. The parties were in agreement to close the case. And if we want to get to the specifics of that order under the F.M. [docket], the consent order, that you all proposed . . . everything other than that one clause

about when they could or could not go back into court was . . . in my F.N. order. . . .

The motion has been brought under Rule 4:50-[1] for relief in exceptional circumstances and situations. [This court] ha[s] not heard anything that is exceptional to cause me to reopen this case. There certainly has not been abuse of my discretion. My ruling was not arbitrary. There's not a manifest denial of injustice.

. . . .

I[] told both . . . attorneys off the record [when] we conferenced [about] the consent order [that] I didn't agree with that [clause]. The reply back was[:] Your Honor, we've got this. We'll work on it and send it back to you. But, we're okay to close the case today. And that's exactly what we did. Again, [there was] no[] . . . need to file a consent order under the F.M. docket.

[Both counsel] . . . failed to send it back to the [c]ourt for review and approval. So, you had no order, unless there's some other F.M. order that I'm not aware of, that said that the parties could not come back unless there was a change in circumstance. And the truth be said, I believe [Phil] didn't argue under the F.M. docket when he filed his motion this year, that there had been a change in circumstances. But, that's not for this [c]ourt. That has nothing to do with this [c]ourt.

Again, the issue requesting a custody hearing was never raised and it was never contemplated that at least immediately that we go to the F.M. court to do the custody. Custody was set by this [c]ourt. No one objected. In fact, everyone agreed on the record.

A-2696-20

And, again, there was never a request for a custody hearing. If there was a custody hearing it would be done in this court under this docket, and a request was never made. So, we cannot now come back and argue exceptional circumstance and say the [c]ourt didn't do what it was supposed to do or that everybody contemplated that the F.M. docket . . . would handle custody.

And I can tell you this [c]ourt never contemplated within a month of having . . . this F.N. case closed, that they would go back to court to fight for custody, when they've still got a young child in the throes of an emotional issue with her father. But, we put in the[ consent order] to allow for communication between both children and their parents when they were ready and that [Nancy's] therapy was to continue in the hopes that down the line she would be able to establish some sort of a relationship back with her father.

It was not on the [c]ourt to follow-up with defense counsel to say[:] hey, you have that consent order? It's not the [c]ourt's obligation. It was the attorneys' obligation. And with all due respect to both of you, you didn't do it. But, I did what was required of me with the law and closed this case under the F.N. docket.

And I resent the implication that I did something incorrectly or that it was even contemplated that I would allow a custody issue to be immediately decided by another judge, in other words, foregoing my responsibility. If defense counsel wanted it[,] I would have been happy to schedule it. But, again, you never asked.

For the reasons that I've stated to counsel back in December and I am now going to state on the

16

A-2696-20

record, I was not going to sign that consent order with the provision that allowed the parties carte blanche to come into court when the standard . . . under the F.M. docket [requires] a change in circumstance. And you both understood that and you both said to me[:] Judge, we can reword this and send it to you and you never did. This is not the [c]ourt's responsibility.

Notably, consistent with the December 7 order granting each party temporary custody of one child, the judge did not foreclose either party from seeking further relief in their FM action. For that reason, the judge issued an order denying Phil's motion, "<u>without prejudice</u>"[10] (emphasis added). These appeals followed.

## II.

Our review of a Family Part court's determination in custody and parenting time issues is limited. "Family Part judges are frequently called upon to make difficult and sensitive decisions regarding the safety and well-being of children." <u>Hand v. Hand</u>, 391 N.J. Super. 102, 111 (App. Div. 2007). "[B]ecause of the family courts' special jurisdiction and expertise in family matters, [we] . . . accord deference to [the] family court[s'] factfinding." <u>N.J. Div. of Youth & Fam. Servs. v. M.C. III</u>, 201 N.J. 328, 343 (2010) (quoting

---

[10] The order was corrected on June 9, 2021 to reflect the correct FN docket number.

Cesare v. Cesare, 154 N.J. 394, 413 (1998)); see also Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016). "[W]e have 'invest[ed] the family court with broad discretion because of its specialized knowledge and experience in matters involving parental relationships and the best interests of children.'" N.J. Div. of Child Prot. & Permanency v. A.B., 231 N.J. 354, 365 (2017) (second alteration in original) (quoting N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 427 (2012)).

We generally defer to factual findings made by family courts when such findings are "supported by adequate, substantial, [and] credible evidence." Ricci v. Ricci, 448 N.J. Super. 546, 564 (App. Div. 2017) (quoting Spangenberg v. Kolakowski, 442 N.J. Super. 529, 535 (App. Div. 2015)). "[W]e defer to [F]amily [P]art judges 'unless they are so wide of the mark that our intervention is required to avert an injustice.'" A.B., 231 N.J. at 365 (quoting F.M., 211 N.J. at 427). With this deference, the family courts' findings "will only be disturbed if they are manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence." N.H. v. H.H., 418 N.J. Super. 262, 279 (App. Div. 2011) (quoting Crespo v. Crespo, 395 N.J. Super. 190, 193-94 (App. Div. 2007)).

However, "[w]e owe no special deference to the . . . [court's] legal determinations." Slawinski v. Nicholas, 448 N.J. Super. 25, 32 (App. Div. 2016). We apply "[a] more exacting standard [in] our review of the trial court's legal conclusions," which we review de novo. Thieme, 227 N.J. at 283. "Notwithstanding our general deference to Family Part decisions, we are compelled to reverse when the court does not apply the governing legal standards." Slawinski, 448 N.J. Super. at 32 (citations omitted).

Policy considerations also guide our review. "In custody cases, it is well settled that the court's primary consideration is the best interests of the children." Hand, 391 N.J. Super. at 105 (citing Kinsella v. Kinsella, 150 N.J. 276, 317 (1997)). In making the determination, a "court must focus on the 'safety, happiness, physical, mental and moral welfare' of the children." Ibid. (quoting Fantony v. Fantony, 21 N.J. 525, 536 (1956)). "In issues of custody and visitation '[t]he question is always what is in the best interests of the children, no matter what the parties have agreed to.'" Ibid. (alteration in original) (quoting P.T. v. M.S., 325 N.J. Super. 193, 215 (App. Div. 1999)).

With those guiding principles in mind, we turn to Phil's and Mike's contention that Judge Eynon abused her discretion by not including in the December 7 order or in an order under the FM docket, the waiver of the

substantial change in circumstances requirement for a change in custody, and by not vacating the order to allow for a hearing on the children's custody and the parties' parenting time. The gist of Phil's and Mike's appellate contentions is that Phil relied on the agreed-upon provision being included in the order terminating the litigation when he decided not to seek the dispositional best interest hearing that Mike contends the court should have conducted before terminating the litigation.

At the outset, we observe that while Phil designated his motion as being brought under Rule 4:50-1(f) that provides for relieving a litigant from a judgment or order "for any other reason justifying relief from the operation of the judgment or order," we conclude Phil actually sought relief under Rule 4:49-2.

Relief under Rule 4:50-1(f) would only vacate all or part of December 7 order terminating litigation in the FN action and not necessarily result in the addition of the omitted language that would enable Phil to pursue Nancy's custody in the FM or FN litigations without the requisite showing of changed circumstances. Rule 4:49-2 addresses motions "seeking to alter or amend a

judgment or order." As far as we can determine, that is exactly the relief Phil sought here.[11]

Reconsideration under Rule 4:49-2 "is a matter within the sound discretion of the [c]ourt, to be exercised in the interest of justice." Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)). It should only be used "for those cases which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence[.]" Ibid. (quoting D'Atria, 242 N.J. Super. at 401-02).

---

[11] In any event, even if properly considered as motion under Rule 4:50-1(f), Judge Eynon correctly determined it should not be granted where, as here, a litigant in retrospect is dissatisfied with a court's order, especially where it was a consent order. A "Rule 4:50-1 is not an opportunity for parties to a consent judgment to change their minds; nor is it a pathway to reopen litigation because a party either views his settlement as less advantageous than it had previously appeared, or rethinks the effectiveness of his original legal strategy." DEG, LLC v. Twp. of Fairfield, 198 N.J. 242, 261 (2009). Accordingly, the use of subsection (f) is "limited to 'situations in which, were it not applied, a grave injustice would occur.'" US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 484 (2012) (quoting Hous. Auth. of Morristown v. Little, 135 N.J. 274, 289 (1994)). As discussed infra, that type of result did not occur in this case.

A party should not seek reconsideration based only on dissatisfaction with the judge's decision, and "[t]he standards for reconsideration are substantially harder to meet than are those for a reversal of a judgment on appeal." Regent Care Ctr., Inc. v. Hackensack City, 20 N.J. Tax 181, 184 (2001), aff'd, 362 N.J. Super. 403 (2003). The party seeking reconsideration must show that the judge "acted in an arbitrary, capricious, or unreasonable manner." D'Atria, 242 N.J. Super. at 401 (remarking that "[a]lthough it is an overstatement to say that a decision is not arbitrary, capricious, or unreasonable whenever a [c]ourt can review the reasons stated for the decision without a loud guffaw or involuntary gasp, it is not much of an overstatement").

Underlying Phil and Mike's appeals are the notion that a dispositional hearing regarding Nancy's custody had to be held prior to the termination of the litigation. That premise is incorrect.

A hearing in the FN action at the conclusion of the litigation is different than a hearing to determine custody in a FM action. Title Nine cases, like an action under N.J.S.A. 30:4C-12, have as their main purpose the protection of children. N.J. Dep't of Child. & Fams., Div. of Youth & Fam. Servs. v. A.L., 213 N.J. 1, 18 (2013). Notably, as here, the Division may obtain custody,

care, or supervision of a child under N.J.S.A. 30:4C-12 regardless of whether abuse or neglect is established under Title Nine. I.S., 214 N.J. at 33 (citing N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 292 (2007)). At the end of the litigation, a dispositional determination is required to address the child's placement based upon his or her best interests. Id. at 36-37.

However, the parties may resolve a custody issue by consent, and in that context, the court may dismiss a Title Nine action without a plenary hearing or other adversarial proceeding concerning the child's custody. See N.J. Div. of Youth & Fam. Servs. v. W.F., 434 N.J. Super. 288, 297-99 (App. Div. 2014); N.J. Div. of Youth & Fam. Servs. v. M.D., 417 N.J. Super. 583, 621 (App. Div. 2011) (permitting parents in an FN litigation to alter the result of a judicial custody determination by consent order or by "attempt[ing] to 'resolv[e] the questions of custody and parenting time by agreement'" (quoting N.J. Div. of Youth & Fam. Servs. v. N.D., 417 N.J. Super. 96, 115 (App. Div. 2010))). However, "[p]arties cannot by agreement relieve the court of its obligation to safeguard the best interests of the child." P.T., 325 N.J. Super. at 215 (citing In re Baby M., 109 N.J. 396, 418 (1988)).

Where there is no consent, and "custody issues become intertwined with child-protection actions, then dispositional questions that lie at the intersection

of the two matters become complicated by a parent's delay in achieving circumstances that make it safe for the child to return to the former custodial parent."  I.S., 214 N.J. at 41.  Even if it is safe to return the child, "a noncustodial parent who obtains full-time care of a child after the initiation of child-protection proceedings 'may always initiate a request for a change in custody,' which involves a changed-circumstances inquiry and, ultimately, becomes a best-interests analysis."  Id. at 40 (quoting N.J. Div. of Youth & Fam. Servs. v. G.M., 198 N.J. 382, 402 n.3 (2009)).  The parent to whom custody was temporarily transferred during the child-protection litigation has the burden of proving placement with them under the best-interests standard.  Id. at 40-41.  Even if this process is not followed "precisely," placement with the parent to whom custody was temporarily assigned is suitable if returning the child to the parent from whom she was removed "would not have been consistent with the court's continued responsibility to act in the best interests of [the children]."  Id. at 41.

So too may a parent seeking the return of his or her child ask for a hearing.  In that case, the parent making the application bears the burden to prove a change in circumstances warranting the child's return to that parent's custody.  Id. at 39-41; see also G.M., 198 N.J. at 387-88, 402 (addressing a

dispositional hearing held at the end of a Title Nine action to determine whether the child "may safely be released to the custody of [the offending parent], who was responsible for [his or her] care at the time of the filing of the complaint, or whether, consistent with N.J.S.A. 9:6-8.51, some other disposition is appropriate").

The standard for the dispositional hearing is the best interests of the child under N.J.S.A. 9:2-4,[12] unless the Title Nine action involves an out-of-

---

[12] The factors for the best-interests analysis are:

> [T]he parents' ability to agree, communicate and cooperate in matters relating to the child; the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; the interaction and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; the needs of the child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes; the extent and quality of the time spent with the child prior to or subsequent to the separation; the parents' employment responsibilities; and the age and number of the children.

> [N.J.S.A. 9:2-4(c).]

home placement of the child and a dispute that does not involve two parents. See I.S., 214 N.J. at 40. The statute "is commonly used in a variety of family matters before a court when making an initial custody determination or a change in custody is requested." Ibid.

Where neither parent seeks a final dispositional hearing as to custody, but instead consents to the termination of the litigation, leaving custody of the children where it stood, no hearing is required. See, e.g., W.F., 434 N.J. Super. at 297-98 (rejecting defendant-parent's argument that the FN court improperly changed custody without hearing after consenting to such custody prior to the termination of the FN litigation).

Here, Judge Eynon correctly pointed out that neither Phil nor Lisa nor the Law Guardians made any request or filed any motion seeking a dispositional hearing as to custody, even after the judge rejected the parents' proposed agreement as to waiving the change in circumstances requirement. Even if they had, it was clear that based on Nancy's refusal to have contact with her father and her belief as to her victimization by him, she was not ready to have contact with Phil. Here, as the Court found in I.S. under the circumstances presented in that case,

> [a]lthough [Phil] should have been required to show
> that [Nancy's] placement with [him] was in her best

interests after filing a changed circumstances application, in view of the timing of all family members' progress toward more healthy relationships, it would require blinders for this [c]ourt not to recognize that granting custody to [Lisa] was an appropriate disposition to end the [protective] proceedings. In our view, the court's ultimate action was the only one that could have been judicially imposed.

[I.S., 214 N.J. at 40-41.]

In this case, it was undisputed that Phil and Nancy were not in a position to be reunited by her being placed in his physical custody. As Judge Eynon observed, Nancy was in need of treatment before that was feasible. Clearly, it was not in the child's best interest, nor even Phil's, for Nancy to be forced to live with her father, whom she believed had sexually abused her. Any change in custody necessarily had to abide a change in these circumstances.

As the judge found "the bottom line from the beginning to the end of this case [was] that this is what [Nancy] believed and . . . without extensive therapy, which [Nancy] . . . is engaged in . . . we were never going to be able [to] conclu[de] the [Title Nine] case to reunite [Nancy] with [Phil]." Nevertheless, the judge specifically made clear that the denial of Phil's belated request for the ability to pursue a change in custody at some point in the future without establishing a change in circumstances was without prejudice to

27

seeking a change when he could establish the requisite proof. "If [Phil] believes that the custodial arrangement he agreed to on [December 7, 2020], is no longer appropriate, he may raise that issue in the FM docket, for example, by filing a motion to change custody alleging sufficient changed circumstances." W.F., 434 N.J. Super. at 299. Under these circumstances, we have no cause to disturb the outcome in this case.

To the extent we have not specifically addressed any of Phil or Mike's remaining arguments, we conclude that either they are without sufficient merit to warrant further discussion in a written opinion, R. 2:11-3(e)(1)(E), or, especially as to Mike's contentions, they were not raised before Judge Eynon and therefore not properly before us, see Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). We only reiterate, the judge did not abuse her discretion when she refused to enter an order with the alleged agreed-to provision or denied Phil's later motion, however it is characterized. "The Family Court possesses broad equitable powers to accomplish substantial justice," Finger v. Zenn, 335 N.J. Super. 438, 446 (App. Div. 2000), and Judge Eynon's decision here ensured that was achieved in this case.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

28